**RURAL HOUSING ALLIANCE**

v.

**UNITED STATES DEPARTMENT OF AGRICULTURE et al., Appellants.**

**No. 73–1771.**

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 5, 1973.

Decided June 3, 1974.

Rehearing Denied July 3, 1974.

Rehearing Denied Sept. 24, 1974.

See 502 F.2d 1179.

---

**28.** *Id.* at 176–77.

David M. Cohen, Atty., Dept. of Justice, of the bar of the Supreme Court of Ill., pro hac vice by special leave of court with whom Irving Jaffe, Acting Asst. Atty. Gen., Harold H. Titus, Jr., U. S. Atty., and Leonard Schaitman, Atty., Dept. of Justice, were on the brief, for appellants. Harold H. Titus, Jr., U. S. Atty., John A. Terry and Derek I. Meier, Asst. U. S. Attys., also entered appearances for appellants.

Victor H. Kramer, Washington, D. C., with whom Richard B. Wolf, Washington, D. C., was on the brief, for appellee.

Before BAZELON, Chief Judge, and ROBB and WILKEY, Circuit Judges.

WILKEY, Circuit Judge:

We have before us once again the question of the proper interpretation of several exemptions from disclosure under the Freedom of Information Act [FOIA].[1] At issue here is a report of a U. S. Department of Agriculture investigation of governmental housing discrim-ination in Florida, withheld from disclosure on the basis of exemptions 4, 5, 6, and 7. The District Court granted the plaintiff Rural Housing Alliance [RHA] motion for summary judgment after *in camera* inspection holding that the report was not within any exemption.[2] We find the District Court applied incorrect legal standards in evaluating the applicability of the exemptions, hence reverse the judgment and remand for consideration consistent with this opinion.

## I. THE NATURE OF THE GOVERNMENT REPORT

The USDA report and the investigation which spawned it were stimulated by an RHA pamphlet, "Studies in Bad Housing in America—Abuse of Power." Utilizing a method of case-history documentation, this RHA tract charged the Farmers Home Administration [FmHA] staff with racial and national origin discrimination in arranging government loans under the Rural Housing Program in two counties in Florida.[3] The Office of Equal Opportunity of the USDA requested an investigation by the Department's Office of Inspector General [OIG]. After investigation, the OIG concluded in a 150-page report that there was no substantial evidence indicating discrimination.

RHA's request for a copy of the investigation report was denied. Instead, OIG made public the "Investigation Summary" and "Statistical Data" sections of the report. Citing exemptions 4, 5, 6, and 7 of FOIA as valid justification for keeping the remainder confidential, the Government did not release the remainder of the report because the Government felt that its form—detailed and intimate case histories of specified, named persons [4]—was inappropriate for disclosure. The Government did indi-

---

1. 5 U.S.C. § 552 (1970).

2. The District Court ordered certain deletions of identifying details to be made; these are discussed at p. 76 *infra*.

3. The two counties are Martin and Palm Beach Counties.

4. Inspector General Kossack's affidavit of 29 January 1973 stated that
 The report includes intimate details and information given by and with respect to borrowers and applicants for loans regarding the marital status of such borrowers and applicants, the number and the legiti-

cate that the material would be disclosed to RHA if it produced written authorization for release from the particular individual involved in any section.[5] Rather than obtain such releases, RHA brought this FOIA suit.

The District Court, in considering RHA's motion for summary judgment, found that the report as a whole was not exempt from disclosure. However, the court recognized that there might be a need to delete details which would permit identification of the individuals involved. Consequently, the court ordered deletion of the names of applicants for loans, the names of those who complained to their Congressmen, those who were interviewed, attorneys, etc. Deletion of geographical references, applications for loans, and affidavits of applicants was likewise ordered.[6]

USDA then filed a motion to clarify or amend the court's order. In support of the motion, USDA submitted an affidavit of the Inspector General, Nathaniel Kossack, explaining the Government's fear that the court order as framed would permit release of intimate details concerning persons who could be readily identified by those familiar with the situation, notwithstanding the deletions, thus exposing the individuals to embarrassment or possible reprisals.[7] The District Judge, without explanation, denied the government motion for clarification.[8] Pending appeal he granted a stay.

## II. EXEMPTION 6: PERSONNEL, MEDICAL, AND SIMILAR FILES

The FOIA was enacted to ensure public access to a wide range of government reports and information.[9] Recognizing that in certain circumstances disclosure realistically would not be in the public interest, Congress attempted to delineate a series of narrow exemptions.[10] The sixth exemption provides that disclosure is unnecessary if the matters are "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."[11]

The District Court held that exemption 6 "has no application to this investigatory report." This holding was based on the view that the exemption "was designed to apply to detailed personal resumes and health records from agencies such as the Veterans Administration, welfare departments and the military."[12] We think this statutory interpretation incorrect. We hold that exemption 6 is applicable to material such as the report here, hence we reverse the District Court and remand for appropriate review.

■■ While the District Judge provided no elaboration of his rationale in the form of findings, he implied that the report here could not be considered "similar files" under exemption 6. Looking to the purpose of exemption 6, on the contrary, we believe that the in-

macy of their children and grandchildren, and the identity of the fathers of their children; information as to their medical condition and history, including statements as to surgery and the possibility of future pregnancies; information as to their occupations and work history and the amounts and sources of their annual income, including the amount of welfare payments received; information as to their ownership of property; information as to their habits with respect to the consumption of alcoholic beverages; information as to family fights which had occurred; information from their employers as to their reliability as employees; information as to their reputation in the community; information as to the risks involved in extending credit

to them; and other information of a clearly personal and confidential nature. Appendix at 43–44.

5. Brief for Appellant at 7.

6. District Court Order of 9 May 1973, in Appendix at 69–70.

7. Affidavit of Inspector General Kossack of 15 May 1973, in Appendix at 72–74.

8. District Court Order of 5 June 1973, in Appendix at 76.

9. 5 U.S.C. § 552(a). *See generally* EPA v. Mink, 410 U.S. 73, 79–80, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973).

10. 5 U.S.C. § 552(b)

11. 5 U.S.C. § 552(b)(6).

12. Appendix at 67.

vestigatory report comes well within the ambit of exemption 6. That exemption was designed to protect individuals from public disclosure of intimate details of their lives, whether the disclosure be of personnel files, medical files, or other similar files.[13] The exemption is not limited to Veterans' Administration or Social Security files, but rather is phrased broadly to protect individuals from a wide range of embarrassing disclosures.[14] As the materials here contain information regarding marital status, legitimacy of children, identity of fathers of children, medical condition, welfare payments, alcoholic consumption, family fights, reputation, and so on, it appears that the report involves sufficiently intimate details to be a "similar" file under exemption 6.[15]

Of course, our interpretation of the statute, concluding that the investigatory report comes within the class of similar files which exemption 6 aimed at protecting, does not resolve the question whether exemption 6 dictates nondisclosure here, for exemption 6 specifically permits protection only of those files whose disclosure would result in "a clearly unwarranted invasion of personal privacy."[16] On remand, it is for the District Judge to determine whether the files fall within that category.

In an opinion by Judge Wright, this court has previously considered the scope of the "clearly unwarranted invasion" language, in Getman v. NLRB.[17] We held that exemption 6 involves a balancing of the interests of the individuals in their privacy against the interests of the public in being informed. We noted that the statute "instructs the court to tilt the balance in favor of disclosure." [18] Specifically we suggested that in balancing interests the court should first determine if disclosure would constitute an invasion of privacy, and how severe an invasion. Second, the court should weigh the public interest purpose of those seeking disclosure, and whether other sources of information might suffice. Such balancing is unique for exemption 6; normally no inquiry into the use of information is made, and the information is made available to any person.[19]

These principles should be applied in evaluating the investigatory re-

13. The House Report on S. 1160, the bill which became the Freedom of Information Act, explains the broad purpose of exemption 6:

> Such agencies as the Veterans' Administration, Department of Health, Education, and Welfare, Selective Service, and Bureau of Prisons have great quantities of files containing intimate details about millions of citizens. Confidentiality of these records has been maintained by agency regulation but without statutory authority. A general exemption for the category of information is much more practical than separate statutes protecting each type of personal record. The limitation of a "clearly unwarranted invasion of personal privacy" provides a proper balance between the protection of an individual's right of privacy and the preservation of the public's right to Government information by excluding those kinds of files the disclosure of which might harm the individual. The exemption is also intended to cover detailed Government records on an individual which can be identified as applying to that individual and not the facts concerning the award of a pension or benefit or the compilation of unidentified statistical information from personal records. H.R.Rep.No.1497, 89th Cong., 2d Sess. 11 (1966) (citation omitted).

14. Furthermore, the exemption should be read in conjunction with 5 U.S.C. § .552(a)(2), which provides that

> To the extent required to prevent a clearly unwarranted invasion of personal privacy, an agency may delete identifying details when it makes available or publishes an opinion, statement of policy, interpretation, or staff manual or instruction. However, in each case the justification for the deletion shall be explained fully in writing.

15. This was not controverted in RHA's brief, which assumed arguendo that the files were "similar files." Brief for Appellee at 16.

16. 5 U.S.C. § 552(b)(6).

17. 146 U.S.App.D.C. 209, 450 F.2d 670 (1971).

18. 146 U.S.App.D.C. at 213, 450 F.2d at 674.

19. 146 U.S.App.D.C. at 213 n. 10, 450 F.2d at 674 n. 10.

ports at issue here.[20] The District Court should first determine the nature and extent of the invasion of the individuals' privacy.[21] It should then consider the public interest purpose of RHA, and whether it could be achieved without this material. A balancing of these factors must thereafter be made.

One important factor which must be considered on remand is whether the deletions thus far ordered are sufficient to protect the privacy of the individuals. In construing the various exemptions, this court has often suggested deletions of certain protected matters so that the remainder of the document could be disclosed.[22] The affidavit of Inspector General Kossack states, however, that the court order does not order adequate deletions, and that enough highly confidential material is left which would enable people with knowledge of the area to determine the identity of the individuals involved.[23] The District Judge did not respond to this affidavit nor make any change in his order. On remand, the District Judge should reconsider and reevaluate this affidavit, and Kossack's prior affidavit submitted before the court's decision.[24]

The District Judge should also consider any alternative sources of information which might be available. For example, the possibility of RHA asking individuals independently for similar information should be explored.[25]

## III. EXEMPTION 4: CONFIDENTIAL OR PRIVILEGED FINANCIAL INFORMATION

The USDA argues that exemption 4 also protects the investigatory report from disclosure. This exemption applies to "trade secrets and commercial or financial information obtained from a person and privileged or confidential."[26] The trial court held that the exemption "was designed to protect the privacy and competitive position of the individual[27] . . . and since the contents of this report do not fit the description in this exemption, it is inapplicable to the instant report. Since all names and other identifying features can be deleted, any remaining financial information will be in the nature of a statistical report."[28]

■■ While it is true that exemption 4 is primarily a trade secrets exemption, it also protects individuals from disclosure of financial information which is privileged or confidential. This court has recently described the scope and meaning of "confidential" in exemption 4 in National Parks & Conservation Association v. Morton. Judge Tamm concluded that,

commercial or financial matter is "confidential" for purposes of the exemption if disclosure of the information is likely to have either of the following effects: (1) to impair the Government's ability to obtain necessary information in the future; or

---

20. Although *Getman* simply involved disclosure of names and addresses of employees, its principles have wide-ranging applicability.

21. The District Court might include a consideration of whether the individuals expected confidential treatment.

22. See, for example, two cases dealing with exemption 4, Grumman v. Renegotiation Board, 138 U.S.App.D.C. 147, 149–150, 425 F.2d 578, 580–581 (1970) ; Bristol-Myers v. FTC, 138 U.S.App.D.C. 22, 26, 424 F.2d 935, 939 (1970).

23. Affidavit of Inspector General Kossack of 15 May 1973, in Appendix at 73.

24. As indicated *supra*, Mr. Kossack submitted one affidavit to the District Court on 29 January 1973, and one on 15 May 1973.

The District Court's judgment was handed down on 9 May 1973.

25. We deal with the Government's suggestion that authorizations for release be obtained by RHA from individuals involved in Part V *infra*. That is different from the suggestion we make here of discussions with individuals independent from the USDA investigation and report.

26. 5 U.S.C. § 552(b)(4).

27. The District Court here cited Bristol-Myers v. FTC, 424 F.2d at 938, which stated that the aim of the exemption was "protecting the privacy and the competitive position of the citizen who offers information to assist government policy makers."

28. Appendix at 67.

(2) to cause substantial harm to the competitive position of the person from whom the information was obtained.[29]

As much of the information collected here related to loan applications, certainly some data is financial information which might merit confidential treatment.[30] Of course a bare claim by an interested government agency of confidentiality is not sufficient.[31] However, the listing of information obtained strongly suggests the accuracy of USDA's conclusion that the information is "implicitly and unquestionably not the kind of information which would customarily be released to the public by the persons from whom it was obtained."[32] Contrary to the trial court, we regard exemption 4 as applicable.

 We therefore remand to the District Court for reconsideration of exemption 4 for reasons similar to those discussed regarding exemption 6. While several of our Circuit's cases support the idea of deletions to permit disclosure of the remainder of the report,[33] we fear that the deletions made by the District Judge do not adequately deal with the rather detailed reasons of the Inspector General that the deletions are ineffective to protect the privacy and confidentiality of the individuals involved.[34]

## IV. EXEMPTION 7: INVESTIGATORY FILES

This provision exempts from disclosure "investigatory files compiled for law enforcement purposes except to the extent available by law to a party other than an agency."[35] The District Court held that USDA "failed to make the requisite showing of imminent adjudicatory proceedings or the concrete prospect of enforcement proceedings,"[36] and hence the files were not protected by exemption 7.

Since this decision on 9 May 1973 this Circuit has extensively considered exemption 7 in two cases, Weisberg v. U. S. Department of Justice,[37] and Aspin v. Department of Defense.[38] We remand to the District Court for reevaluation of the applicability of exemption 7 in the light of these opinions and our comments hereafter.

The standard used by the District Judge is no longer proper under the *Weisberg* and *Aspin* decisions. In *Weisberg*, where FBI materials concerning the investigation of President Kennedy's death were sought, we held in an *en banc* decision by Judge Danaher that the files were exempt from disclosure because they were investigatory files compiled for law enforcement purposes.[39] Despite the fact that no prosecution or other such method of law enforcement was undertaken or pending, the files re-

---

29. No. 73–1033 (1974), 162 U.S.App.D.C. ——, ——, 498 F.2d 765, 770 (citation omitted).

30. The Senate Report on the bill which became FOIA suggests that loan applications would be within the scope of exemption 4. S.Rep.No.813, 89th Cong., 1st Sess. 9 (1965).

31. Bristol-Myers v. FTC, 138 U.S.App.D.C. at 25, 424 F.2d at 938.

32. Affidavit of Inspector General Kossack of 29 January 1973, in Appendix at 44.

33. *See* note 22 *supra*. *See also* National Parks & Conservation Association v. Morton, No. 73–1033, 162 U.S.App.D.C. ——, ——, 498 F.2d 765, 770 (1974).

34. *See* p. 77 *supra*.

35. 5 U.S.C. § 552(b)(7).

36. District Court Order in Appendix at 67, *citing Bristol-Myers.*

37. 160 U.S.App.D.C. 71, 489 F.2d 1195 (1973) (en banc), cert. denied, 42 U.S.L.W. 3627, 416 U.S. 993, 94 S.Ct. 2405, 40 L.Ed.2d 772 (1974).

38. 160 U.S.App.D.C. 231, 491 F.2d 24 (1973). Still more recently we have considered exemption 7 in Center for National Policy Review v. Weinberger, No. 73–1090, 163 U.S.App.D.C. ——, 502 F.2d 370 (1974).

39. The court relied heavily on the Attorney General's determination, and the District Court review of that determination. No *in camera* inspection was undertaken by either court.

mained exempt from disclosure. The focus was on "how and under what circumstances the files were compiled . . . ."[40]

In *Aspin*, decided one month after *Weisberg*, Judge Tamm's opinion for the court provided a more detailed analysis of exemption 7. The material at issue in *Aspin* was the report of the Peers Commission, which investigated the My Lai incident and subsequent Army investigation, with emphasis on evidence of possible offenses under the Uniform Code of Military Justice and possible future prosecution. Judge Tamm noted that the duty of the trial court was to "examine the total record to determine 'whether the files sought . . . relate to anything that can fairly be characterized as an enforcement proceeding.' "[41] The Peers Commission Report, conducted with a view of court-martial proceedings, did meet this test and hence came within the exemption.

In *Aspin* the purposes of exemption 7 were identified: the prevention of premature disclosure of an investigation's results, and the maintenance of confidentiality of both the procedures of investigation and the witnesses' revelations.[42] These purposes compelled us

there to conclude that the termination of enforcement proceedings was not a cause for withdrawal of exemption 7 protection.[43] Additionally, our decision in *Weisberg* has made clear that exemption 7 protection does not end "when there is no longer any prospect for future enforcement proceedings (necessitated in *Weisberg* by the death of the only suspect) . . . ."[44]

It is established now that the Government need not show "imminent adjudicatory proceedings or the concrete prospect of enforcement proceedings." What the Government *is* required to show is that the investigatory files were compiled *for adjudicative or enforcement purposes*. Whether the adjudication or enforcement has been completed is not determinative, nor is the degree of likelihood that the adjudication or enforcement may be imminent, as the District Judge here thought before *Weisberg* and *Aspin*. Here the investigation was undertaken to determine whether USDA's FmHA had engaged in racial discrimination. As a result of the investigation, USDA concluded that there had been no discrimination, and naturally there have been no enforcement proceedings. This result does not alter the basic

40. 160 U.S.App.D.C. at 78, 489 F.2d at 1202.

41. 160 U.S.App.D.C. at 234, 491 F.2d at 27 (citation omitted).

42. 491 F.2d at 29, *citing* Frankel v. SEC, 460 F.2d 813 (2d Cir.), cert. denied, 409 U.S. 889, 93 S.Ct. 125, 34 L.Ed.2d 146 (1972). We referred to Chief Judge Bazelon's suggestion in *Bristol-Myers* that the District Court should "determine whether the prospect of enforcement proceedings is concrete enough to bring into operation the exemption . . . ." 424 F.2d at 939–940. (This phraseology was adopted by the District Court in the case at bar.) We distinguished the My Lai investigation, where courts-martial had been held, from the *Bristol-Myers* situation, where

the Federal Trade Commission had made a conscious decision *not* to maintain any enforcement proceeding at least two years prior to suit to compel disclosure of the documents. The question in that case was, therefore, whether the bare assertion

by an agency that files were compiled for law enforcement purposes *when no enforcement proceedings were in fact ever prosecuted*, would be enough to preclude disclosure. The court held that such an assertion was not sufficient, and remanded for further consideration in the trial court.

491 F.2d at 29 (citations omitted; emphasis original). We thus concluded in *Aspin* that the District Court's reliance on *Bristol-Myers* was misplaced.

43. "[I]f investigatory files were made public subsequent to the termination of enforcement proceedings, the ability of any investigatory body to conduct future investigations would be seriously impaired. Few persons would respond candidly to investigators if they feared that their remarks would become public record after the proceedings. Further, the investigative techniques of the investigating body would be disclosed to the general public." 491 F.2d at 30.

44. *Aspin*, 491 F.2d at 30.

inquiry when exemption 7 is claimed: was it an investigation "for law enforcement purposes"? To put the question another way, with specific applicability to the case here: is an agency's internal monitoring to insure that its employees are acting in accordance with statutory mandate and the agency's own regulations an investigation "for law enforcement purposes" within the meaning of exemption 7?

On its face, exemption 7's language appears broad enough to include all such internal audits. If this broad interpretation is accepted, however, we immediately encounter the problem that most information sought by the Government about its own operations is for the purpose ultimately of determining whether such operations comport with applicable law, and thus is "for law enforcement purposes." Any internal auditing or monitoring conceivably could result in disciplinary action, in dismissal, or indeed in criminal charges against the employees. But if this broad interpretation is correct, then the exemption swallows up the Act; exemption 7 defeats

one central purpose of the Act to provide public access to information concerning the Government's own activities.

We think "investigatory files compiled for law enforcement purposes" must be given the same meaning, or a meaning to achieve the same result, whether the subject of the files is a government employee or an ordinary private citizen. While Congress did not confront this problem specifically, the examples cited of "investigatory files" and "law enforcement purposes" point to this interpretation.[45] For the purpose of analyzing the application of exemption 7 in the instant and similar cases, it is therefore necessary to distinguish two types of files relating to government employees: (1) government surveillance or oversight of the performance of duties of its employees; (2) investigations which focus directly on specifically alleged illegal acts, illegal acts of particular identified officials, acts which could, if proved, result in civil or criminal sanctions.[46] The applicability of exemption 7 to each individual case is to be ascertained by making a careful distinction between these two categories.[47]

---

45. The Senate Report states that "investigatory files compiled for law enforcement purposes" are "files prepared by Government agencies to prosecute law violators." S. Rep.No.813, 89th Cong., 1st Sess. 9 (1965). No distinction is drawn between violators who are government employees and violators who are private citizens. *See also* H.R. Rep.No.1497, 89th Cong., 2d Sess. 11 (1966).

46. The character of the statute violated would rarely make a material distinction, because the law enforcement purposes protected by exemption 7 include both civil and criminal purposes, *e. g.*, civil rights, as here. *See* H.R.Rep.No.1497, 89th Cong., 2d Sess. 11 (1966):

This exemption covers investigatory files related to enforcement of all kinds of laws, labor and securities laws as well as criminal laws. This would include files prepared in connection with related Government litigation and adjudicative proceedings. S.1160 is not intended to give a private party indirectly any earlier or greater access to investigatory files than he would have directly in such litigation or proceedings.

*Cf.* Evans v. Department of Transportation, 446 F.2d 821 (5th Cir.), cert. denied, 405 U.S. 918, 92 S.Ct. 944, 30 L.Ed.2d 788 (1972).

47. This distinction was also drawn in Center for National Policy Review v. Weinberger, No. 73–1090, 163 U.S.App.D.C. ——, 502 F. 2d 370 (1974), where Judge Leventhal wrote for the court,

There is no clear distinction between investigative reports and material that, despite occasionally alerting the administrator to violations of the law, is acquired essentially as a matter of routine. What is clear, however, is that where the inquiry departs from the routine and focuses with special intensity upon a particular party, an investigation is under way.

*Id.* at ——, 502 F.2d at 373. Judge Leventhal separately analyzed the meaning of the phrases "investigatory files" and "law enforcement purposes." We have not found such separation necessary here, but have dealt with the elements as they "fuse and interact." *Id.* at ——, 502 F.2d at 374.

The purpose of the "investigatory files" is thus the critical factor. Was the purpose of the disputed report here to determine if grounds existed for bringing a civil rights action against the loan officer? If the purpose of the investigation was to consider an action equivalent to those which the Government brings against private parties, thus demonstrating that the "law enforcement purpose" was not customary surveillance of the performance of duties by government employees, but an inquiry as to an identifiable possible violation of law, then such inquiry would have been "for law enforcement purposes" whether the individual were a private citizen or a government employee. But was this the purpose of the investigation here? On this record we cannot say, and hence our consideration of the applicability of exemption 7 likewise calls for a remand to the trial court for inquiry as to this[48] and other relevant points.

## V. EFFECT OF INDIVIDUAL'S CONSENT TO GOVERNMENT DISCLOSURE

The Government has offered to release information concerning any individual to RHA if the written authorization of the individual is obtained. Specifically, the Government wrote to RHA,

> If you furnish us ·with appropriate written authorizations from those individuals who, to your present knowledge, furnished information in this investigation, we will consider making available information furnished by any such individual.[49]

RHA did not obtain any individual releases.

The exemptions to the Freedom of Information Act place limits on compulsory disclosure; presumably the Government has power to waive an exemption. However, in so doing, the Government and a court, when its authority is invoked, must be alert to protect other interests in confidentiality besides those of the Government which are present in each of the nine exemptions, some more obviously than others. Much information is disclosed voluntarily and involuntarily (but with less difficulty than would otherwise be true), because the individuals supplying the information believe that, since the Government has power to protect confidentiality under the exemptions, it will do so.

This suggestion of the Government for obtaining individual releases protects the interest involved in exemption 6 that individuals' medical, personnel, or similar files not be indiscriminately disclosed. However, the ambiguous terms of the Government's offer to release should be clarified. It is unclear whether the Government would release personal information about one person which is furnished by a second person on simply the second's authorization, or only by the first's, or by both. One interest protected by exemption 7, that of enabling the investigatory process to proceed unimpeded by hesitancy of witnesses or disclosure of investigatory technique, which was not previously evaluated by the trial court, should not be overlooked on remand.

The trial court should weigh carefully several difficulties inherent in the release by individual consent of government compiled information on private

---

48. In so determining, a court must of course be wary of self-serving declarations of any agency; it must be clear to the court that more than ephemeral possibilities of enforcement were anticipated by the agency in undertaking the investigation. If an investigatory file is compiled for the purpose of determining whether a law enforcement proceeding should be brought (in the same manner as against a private citizen) and against whom, then, whether the agency concludes that proceedings are necessary or not, the agency may utilize exemption 7 to protect its investigatory process and sources.

49. ·Appendix at 44.

individuals. First, if many consent, there may be explicit or implicit group pressure on those few who do not wish to have their lives publicized. Second, there may be pressure by the RHA or other groups to force individuals to comply. We impute no bad motives or actions to RHA; we merely state a possibility true for any interested organization. Third, if many consented-to disclosures are made, it may become significantly easier to identify the remainder of the group because of the smaller size of unknowns.

Finally, putting the same amount of information in the public domain could be achieved by private interviewing of those individuals who wish to participate. They can then reveal whatever information they desire, and this process might, as a practical matter, be no more time-consuming for RHA than obtaining formal consents to disclosure by the government. This approach would be similar to the approach taken for grand jury witnesses. We do not allow a grand jury witness' testimony to be revealed except under well-defined rules; however, the witness is usually free to come out of the grand jury and tell the public what he knows with regard to the subject of the grand jury inquiry.

## VI. CONCLUSION

We remand this case to the District Court for reconsideration of exemptions 4, 6, and 7, in light of this opinion. In so doing, we need not now confront the question of equitable discretion of the court to go beyond FOIA, which was suggested by USDA. We also do not consider the applicability of exemption 5,[50] as the Government has not objected to the District Court's holding that this exemption is inapplicable.

Reversed and remanded.

50. We have recently had occasion to consider exemption 5 in Montrose Chemical Corpora-

tion v. Train, 160 U.S.App.D.C. 270, 491 F. 2d 63 (1974).