Mark J. GREEN and Beverly C. Moore, 'Jr., Plaintiffs,

v.

Richard G. KLEINDIENST, Attorney General, Defendant.

Civ. A. No. 331–73.

United States District Court, District of Columbia.

July 23, 1974.

Ronald L. Plesser, Washington, D. C., for plaintiffs.

Thomas G. Corcoran, Jr., Asst. U. S. Atty., Washington, D. C., for defendant.

## MEMORANDUM–ORDER

GASCH, District Judge.

This matter is before the Court on plaintiffs' motion for summary judgment and defendant's motion to dismiss or, in the alternative, for summary judgment.

Plaintiffs have brought this action pursuant to the Freedom of Information Act [FOIA], 5 U.S.C. § 552, seeking to enjoin officials of the Department of Justice from refusing to permit inspection and copying of certain agency records concerning the "business review procedure" program of the Antitrust Division of the Department of Justice. The plaintiffs are associated with the Corporate Accountability Research Group in Washington, D. C., a public interest organization, and have filed a request for the records in accordance with the FOIA. Although many of the requested documents have been made available to plaintiffs during the course of this litigation, the government still adheres to its original position that it has no legal obligation to release the contents of these "business review" files due to statutory exemptions to disclosure contained in 5 U.S.C. § 552(b)(4) and (b)(7). Preliminary to examining the applicability of these exemptions to the records at issue, it is necessary to outline in detail the nature of these Department of Justice documents.

## I.

The Antitrust Division promulgated regulations, in effect since February 1, 1968, which detail certain procedures in which concerned businessmen can ascertain the present enforcement intentions of the Division with respect to proposed business conduct. 28 C.F.R. § 50.6. Historically, these procedures are the outgrowth of what was known as the "railroad release" letters which were is-

sued by the Antitrust Division intermittently from 1939 forward. These letters reviewed in advance proposed business conduct in an effort to determine whether such conduct would subject the business to criminal prosecution if the antitrust laws were applied. This same purpose has been carried over into the present business review procedures.

The governnment has filed with the Court the affidavit of Thomas C. Kauper, dated September 27, 1973 [hereinafter referred to as the Kauper affidavit]. Mr. Kauper, the Assistant Attorney General in charge of the Antitrust Division of the Department of Justice, has described with specificity the policies behind the business review procedure and the nature of the files at issue. A reading of this affidavit and a review of the pleadings filed herein reveal the following facts respecting these records.

With regard to the policies of this program, the business review procedures, as noted, were instituted for the purpose of informing businesses of the Antitrust Division's enforcement intent as to actions about to be taken by that business. There are benefits to both the government and the business through the invocation of this process. The benefit to the government is twofold. First, proposed business conduct which is of questionable legality is brought directly to the attention of the Department of Justice by the business itself. Such a procedure hastens the investigatory process and obviates the necessity of examining leads from other sources that may indicate violations of the antitrust laws. Secondly, the business requesting review provides the government with a great amount of the information that is needed in the investigation. In this connection, the Justice Department regulations provide the following conditions before a business can take advantage of the business review procedure:

The requesting parties are under an affirmative obligation to make full and true disclosure with respect to the business conduct for which review is

requested. Each request must be accompanied by all relevant data including background information, complete copies of all operative documents, and detailed statements of all collateral oral understandings, if any. All parties requesting the review letter must provide the Division with whatever additional information or documents the Division may thereafter request in order to review the matter. In connection with any request for review the Division will also conduct whatever independent investigation it believes is appropriate.

28 C.F.R. § 50.6 ¶ 4.

Thus, it is readily apparent that it is in the government's interest to be able to gather evidence of business conduct that may violate the antitrust laws, thus possibly requiring future enforcement proceedings, through this procedure of voluntary submission of data by the requesting business without resort to compulsory process. On the other hand, such a process similarly redounds to the benefit of the business requesting review. Clearly, any business proposing a merger or some other action with antitrust implications would appreciate the knowledge that the government presently does not oppose such action. By working with the Antitrust Division, the business can avoid possibly costly litigation with the Justice Department and the business problems that arise when a company is involved in antitrust litigation with the government.

The records needed to advise the business as to present government enforcement intentions are gathered within this policy background. Once a request for review is received the government begins a full-fledged investigation that may include interviews with competitors of a merging business or interviews with other persons who may be affected by the proposed business action. Any materials obtained during this investigation are available for use against the requesting party in a subsequent antitrust enforcement proceeding. Likewise, the investigatory files gathered in a business review matter may be used in an enforcement proceeding against another business if the material gathered in the business review investigation is relevant to that other business' activities. Upon completion of the investigation, the staff of the Antitrust Division write memoranda concerning the proposed conduct and make recommendations as to the contents of the reply to the review request. That reply takes the form of a letter and is commonly called the "business review letter."

Any single business review request thus generates much material which can be categorized as follows: (A) the original request for review; (B) the factual material furnished in support of the request by the party concerned; (C) additional factual material requested by Division attorneys in the course of their investigation; (D) additional factual material drawn from Division files or developed in the course of independent investigation by Division attorneys; (E) internal Division memoranda, produced at both the staff and reviewing levels, analyzing the factual material developed during the investigation and including material which draws legal and policy conclusions; (F) the business review letter itself.

With respect to category (E) above, the internal memoranda, plaintiffs have dropped any claim to such material. Additionally, with regard to category (F), the business review letter itself, the government has made available to plaintiffs 83 of the 85 business review letters considered by the Antitrust Division between 1968 and 1972. As a result, the only documents still at issue are those in categories (A) through (D).

II.

Plaintiffs maintain two theories in support of their argument for disclosure. First, it is urged that 5 U.S.C. § 552(a)(2)(B) mandates the disclosure of these records. That section provides that

Each agency . . . shall make available for public inspection and

copying . . . (B) those statements of policy and interpretations which have been adopted by the agency and are not published in the Federal Register.

Business review requests and the responsive business review letters, plaintiffs contend, are interpretations adopted by the agency within the meaning of this section. Plaintiffs' second argument is simply that since these files come within none of the exemptions to disclosure as set forth in 5 U.S.C. § 552(b), the documents must be released.

■ It is the government's contention that the exemption contained in 5 U.S.C. § 552(b)(7) is directly applicable to the records here at issue. If this contention is valid, it is unnecessary to discuss whether the requests for review or the business review letters come within the scope of § 552(a)(2)(B). This is so in view of the language of section 552(b) which states that all the disclosure requirements of 5 U.S.C. § 552 are inapplicable if one of the exemptions of section 552(b) applies to the records at issue. The language of the House Report supports the view that even if a record comes within the disclosure requirements of subsection 552(a), it need not be disclosed if an exemption of subsection 552(b) is applicable:

. . . All of the preceding subsections of S. 1160—requirements for publication of procedural matters and for disclosure of operating procedures, provisions for court review, and for public access to votes—are subject to the exemptions from disclosure specified in subsection (e).

H.R.Rep.No.1497, 89th Cong., 2d Sess. (1966), at 9. Inasmuch as this Court finds that the (b)(7) exemption is applicable, it is thus unnecessary to discuss whether Section 552(a)(2)(B) is relevant to the records at issue.

### III.

As noted, the law that this Court finds dispositive is 5 U.S.C. § 552(b)(7) which exempts from disclosure those documents which are clearly part of "investigatory files compiled for law enforcement purposes except to the extent available by law to a party other than an agency."

The Court of Appeals for this Circuit has recently examined this exemption in detail in a number of decisions. Weisberg v. U. S. Department of Justice, 489 F.2d 1195 (D.C.Cir.1973) (en banc); Aspin v. Department of Defense, 491 F. 2d 24 (D.C.Cir.1973); Ditlow v. Brinegar, 494 F.2d 1073 (D.C.Cir.1974); Center for National Policy Review v. Weinberger, 502 F.2d 370 (D.C.Cir.1974); Rural Housing Alliance v. United States Dept. of Agriculture, 498 F.2d 73 (D. C.Cir.1974).

■ After a careful reading of the above decisions the Court is constrained to conclude that the business review procedure files are exempt from disclosure under the (b)(7) exemption. Although the government has a very heavy burden in showing that the records fall clearly within the (b)(7) exemption, Vaughn v. Rosen, 157 U.S.App.D.C. 340, 484 F.2d 820 (1973), the Court is convinced that burden has been met in this case. More specifically, the government's burden as to the (b)(7) exemption has recently been elucidated in the case of Rural Housing Alliance v. U. S. Dept. of Agriculture, *supra:*

It is established now that the Government need not show "imminent adjudicatory proceedings or the concrete prospect of enforcement proceedings." What the Government *is* required to show is that the investigatory files were compiled *for adjudicative or enforcement* purposes. Whether the adjudication or enforcement has been completed is not determinative, nor is the degree of likelihood that the adjudication or enforcement may be imminent . . . . (Emphasis in original).

498 F.2d at 80.

It is clear upon a reading of the record in this case that these business review files are compiled for adjudica-

tive and law enforcement purposes. The Kauper Affidavit adequately demonstrates the law enforcement aspect of these records:

(b) Factual material contained in such files, whether submitted by the requesting parties or, developed from other sources . . . is gathered and used by the Division in its capacity as a law enforcement agency. Once a matter comes to the attention of the Division by means of a business review request it is handled in the same manner as any other investigation, using the investigative techniques available to most prosecutors. The Division also exercises prosecutorial discretion as do other enforcement agencies. Some business review matters, for instance, are decided on such grounds, i. e., that the merger is probably illegal but too small to justify the expenditure of resources that would be needed to try the case. Given the structure of the Division—sections organized by industry—information developed in any business review matter (even those where the requesting party was informed that the Division had no present intention to sue) may be used during subsequent investigations and litigated cases in the same industry. For example, information developed during the course of the business review of General Electric's sale of computer operations to Honeywell is being used in preparation of the suit pending against International Business Machines Corporation in the Southern District of New York. Division experience in passing on business review submissions concerning Capper-Volstead Act farm cooperatives is being used in current investigations and in preparation of a suit pending against the National Broiler Marketing Association in the Middle District of Georgia. Furthermore, where the Division has informed a requesting party that if the proposed business conduct or transaction occurs we will file suit under the antitrust laws, the business review file relating to such matter is, in a very real sense, a "suspense file." If the parties act at some point in the future, the Division will sue.

■ The fact that these records are "suspense files" and that enforcement proceedings are not imminent is of no moment since the *en banc* decision of the Court of Appeals in Weisberg v. U. S. Department of Justice, *supra,* wherein it was held that the (b)(7) exemption is applicable although the enforcement proceeding is not imminent. *See* quote from Rural Housing Alliance v. United States Department of Agriculture, *supra,* 498 F.2d at 77.

■ Plaintiffs contend, however, that the (b)(7) exemption is inapplicable here. It has been established, it is argued, that where the defendant or potential defendants to a law enforcement action are aware of the information in the possession of the agency, there is no longer any interest in protection through application of the seventh exemption. That line of argument has been laid to rest in the recent decision of Ditlow v. Brinegar, 494 F.2d 1073 (D.C.Cir.1974). In that decision plaintiffs sought disclosure, *inter alia,* of all correspondence between the National Highway Traffic Safety Administration (NHTSA) and the auto manufacturers (the investigated parties) in connection with pending safety defect notifications. In the trial court, the government relied primarily on the (b)(7) exemption. But the court found that since the correspondence was between the agency and the auto manufacturer being investigated, (b)(7) was inapplicable:

. . . There are no apparent problems with confidential sources, premature revelation of suspects and the like. And most certainly in the present case there is no problem about discovery of the information by the subject of the investigation, since the auto manufacturer is either the recipient or the source of all the correspondence here sought. "Disclosure of materials already in the hands of po-

tential parties to law enforcement proceedings can in no way be said to interfere with an agency's legitimate law enforcement functions and, therefore, such material is not within the exception of § 552(b)(7)." (Footnotes omitted.)

Ditlow v. Volpe, 362 F.Supp. 1321 (D.D. C.1973), at 1325.

Although this language in the decision below was not specifically addressed in the appellate decision, the Court of Appeals found that in light of the fact that the correspondence was compiled for law enforcement purposes, exemption 7 was applicable. The fact that the correspondence was in the hands of the investigated party was of no import and the lower Court decision was reversed.

In conclusion, therefore, in view of the showing by the defendant in its detailed affidavits and the fact that deletions cannot be made that would vitiate the fact that these are investigatory files, the Court can only conclude that the materials still at issue were justifiably withheld by the Attorney General. It serves the interests of justice and the statutory purpose that these records be kept in confidence. Future antitrust enforcement efforts will be aided by the information voluntarily submitted by businesses under this program. In addition, persons supplying information under these procedures will more likely be forthcoming if they know that their submissions will not be available to public perusal. *See* Aspin v. Department of Defense, *supra*; Frankel v. SEC, 460 F. 2d 813, 817–818 (2d Cir.), cert. denied, 409 U.S. 889, 93 S.Ct. 125, 34 L.Ed.2d 146 (1972).

### IV.

The Court need not consider the arguments of the parties concerning exhaustion of administrative remedies in light of the applicability of the (b)(7) exemption. However, it is worthy of note, although the Court need not reach the question, that much of the material in these business review files may well come within 5 U.S.C. § 552(b)(4), which exempts from disclosure "trade secrets and commercial or financial information obtained from a person and privileged or confidential." *See* National Parks and Conservation Association v. Morton, 498 F.2d 765 (D.C.Cir.1974).

Accordingly, it is by the Court this 22nd day of July, 1974,

Ordered that plaintiffs' motion for summary judgment be, and the same hereby is, denied; and it is further

Ordered that defendant's motion for summary judgment be, and the same hereby is, granted.