SKELTON, Senior Judge,
concurring in part and dissenting in part:
I concur with the holding of the majority that Form 4069 is purely factual in nature and is not exempt from disclosure under any of the exemptions of the Freedom of Information Act (The Act).
I respectfully dissent as to the holding of the majority that the union authorization cards are exempt from disclosure under Exemption 6 of the Act. Exemption 6 provides that the following information in a Government Agency file is exempt from disclosure to the public:
“(6) Personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy.”
In my opinion, the determination of what is exempt from disclosure under this Section of the Act requires a two-step process as follows: First, we must decide whether or not the requested information is a personnel, medical or similar file. If the information is neither a personnel, medical nor similar file, that is the end of the matter and the information must be disclosed. In making this determination, if the information involves a written instrument, we apply the usual rules of law in construing the instrument. If questions of fact are involved, we decide the matter in accordance *1185 with the substantial evidence rule as defined by the Supreme Court in Consolidated Edison Co. v. N. L. R. B., 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126, 140 (1938). Even if it is decided that the requested information is a personnel, medical or similar file, the material without more is not automatically exempt from disclosure. Robles v. E. P. A., 4 Cir., 484 F.2d 843, 846 (1973). The Supreme Court held in Dept. of Air Force v. Rose, 425 U.S. 352, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976):
"_ _ _We find nothing in the wording of Exemption 6 or its legislative history to support the Agency’s claim that Congress created a blanket exemption for personnel files. Judicial interpretation has uniformly reflected the view that no reason would exist for nondisclosure in the absence of a showing of a clearly unwarranted invasion of privacy whether the documents are filed in ‘personnel’. or ‘similar’ files. See, e. g., Wine Hobby USA, Inc. v. IRS, 502 F.2d 133, 135 (CA3 1974); Rural Housing Alliance v. United States Dept. of Agriculture, 162 U.S.App.D.C. 122, 126, 498 F.2d 73, 77 (1974); Vaughn v. Rosen, 157 U.S.App.D.C. 340, 484 F.2d 820 (1973); Getman v. NLRB, 146 U.S.App.D.C. 209, 213, 450 F.2d 670, 674 (1971). Congressional concern for the protection of the kind of confidential personal data usually included in a personnel file is abundantly clear. But Congress also made clear that non-confidential matter was not to be insulated from disclosure merely because it was stored by the Agency in ‘personnel’ files.” 425 U.S. 371, 96 S.Ct. 1604, 48 L.Ed. 27. (Emphasis supplied)
Accordingly, if it is determined that requested information is a personnel, medical or similar file, and only then, we must proceed to the second step, which is a determination of whether or not a disclosure of the information would “constitute a clearly unwarranted invasion of personal privacy.” If so, the material is exempt, and, if not, it is not exempt and must be disclosed.
Although not saying so in so many words, the courts have been fairly uniform in following this two-prong determination of what should or should not be disclosed under Exemption 6. This procedure was followed in Department of the Air Force v. Rose, supra; in Robles v. E. P. A., 484 F.2d 843, 4th Cir., (1973); in Rural Housing Alliance v. U. S. Department of Agriculture, 162 U.S.App.D.C. 122, 126, 498 F.2d 73, 77 (1974); in Getman v. N. L. R. B., 146 U.S. App.D.C. 209, 213, 450 F.2d 670, 674 (1971); and in Committee on Masonic Homes, etc., v. N. L. R. B., 556 F.2d 214, 3rd Cir., (1977).
Following this procedure and these guidelines in the instant case, we must determine under the first step whether or not the union cards are personnel, medical or similar files. They are clearly not medical files or similar to medical files, and this is conceded by the majority. In my opinion, the cards are not personnel files, as they do not contain information normally included in personnel files. The Supreme Court pointed out in Department of Air Force v. Rose, supra, that the requested records in that case were not personnel files, saying:
“Moreover, even if we were to agree that ‘personnel files’ are wholly exempt from any disclosure under Exemption 6, it is clear that the case summaries sought here lack the attributes of ‘personnel files’ as commonly understood.”
“ - - _ [T]he . _ . records do not contain the ‘vast amounts of personal data,’ S.Rep. No. 813, p. 9, which constitute the kind of profile of an individual ordinarily to be found in his personnel file: showing, for example, where he was born, the names of his parents, where he had lived from time to time, his high school or other school record, results of examinations, evaluations of his work performance.” 425 U.S. 377, 96 S.Ct. 1606, 48 L.Ed.2d 30.
The union cards do not contain the historical life or work records of the workmen involved that are ordinarily found in personnel files. Accordingly, they are not personnel files. The majority agrees that this is true. I emphasize the point only because it is important to the consideration below of “similar” files.
*1186 Having determined that the union cards are not medical files nor similar to medical files and are not personnel files, the only question left for consideration under step one is whether or not the cards are files that are “similar” to personnel files. The majority holds that they are. In my opinion they fall into error in doing so for the reasons that follow.
In the first place, an examination of the cards shows that they are instruments that are the property of the Union and not of the plaintiff company. At the top of the cards appear the words “authorization and application for membership” in the Union. The cards are that and nothing more. They contain none of the characteristics or profiles usually and ordinarily found in personnel files such as where the signers were born, their ages, the names of their parents, where they have lived and worked from time to time, their school records and training, results of examinations, evaluations of work performance, attendance records, attitudes and aptitudes, tardiness and absence records, health conditions, length of employment, and many other items usually found in personnel records. As shown by the above, personnel records are historical in nature and contain information relative to a workman’s life history and his work history. They encompass data on him and about him and his life and work in the past. None of this information was contained in the union cards.
Furthermore, the cards were prospective in nature and were prepared by the workmen with reference to future events that had nothing to do with their past work records or their personnel records kept by the company. The cards merely expressed the personal views and wishes of the workmen on actions to be taken in the future. Neither the workmen nor the Union has objected to their disclosure.
The information on the cards such as the names and addresses of the workmen and their employer, their department, shift and classification, is nothing more than data for the Union that is usually found in a directory, and has nothing to do with their life and work history. It should be pointed out that the company has all of this information in its possession and it is not the information it is requesting. All that the company is requesting is the signatures of the workmen on the cards and the dates they signed them. If it could be assumed arguendo that all of the information on the cards except the signatures and dates is similar to personnel files and exempt from disclosure, it could be excised in accordance with the Amendment to the Act, and the signatures and dates could be disclosed.[1] This was the procedure followed by the Supreme Court in Dept. of the Air Force v. Rose, supra, and also by the court in Rural Housing Alliance v. U. S. Dept. of Agriculture, supra. If all of the information on the cards except the signatures and dates is excised, all that would be left would be the signatures and the dates. In that event, it could hardly be said that the bare signatures and dates are “similar” to personnel files within the meaning of the Act, or even as a matter of fact.[2] In Getman v. N. L. R. B., supra, the court ordered disclosure of names and addresses of employees eligible to vote in a representation election. In Robles v. E. P. A., supra, names and addresses of persons were ordered disclosed by the court.
I would hold that the union cards are not “similar” to personnel files. Therefore, since the cards are not personnel, medical or similar files, they are not exempt under exemption (6) of the Act and must be disclosed. Under these circumstances, it is not necessary, nor is there authority under the Act, for us to proceed to the second step and determine whether or not a disclosure of the requested information would “constitute a clearly unwarranted invasion of personal privacy.” Yet the majority has done so and in so doing has fallen into error. The majority has been misled, in my opinion, by two decisions of the Third Circuit *1187 Court of Appeals, namely, Wine Hobby USA, Inc. v. I. R. S., supra, and Committee on Masonic Homes, etc. v. N. L. R. B., supra, which, with deference to that learned court, I believe were wrongly decided. In the Wine Hobby case the court used step two to establish step one when it held that the names and addresses of the persons who had obtained permits to make wine for personal use at home was a file “similar” to personnel and medical files, because “the disclosure of which may constitute a clearly unwarranted invasion of personal privacy.” This put the “cart before the horse”, so to speak. The court should have first determined from the facts whether or not the names and addresses were similar to medical and personnel files, and, if so, then determined whether or not their disclosure would be a clearly unwarranted invasion of personal privacy. The holding of the court that the names and addresses of the permit-tees were similar to medical files shows how wrong the decision was, as the names and addresses had no medical connection or information whatever.
In the Committee on Masonic Homes case, which is a ease involving the same or similar union cards as those here, the same court recognized that “exempt files must in some way be ‘similar’ to personnel and medical files” and then held that the cards contained, in effect, a thumbnail sketch of the employees’ job classification and status, in addition to the union authorization, and, therefore, were “similar” files. This holding was clearly erroneous, as it is abundantly clear, that the mere “thumbnail sketch”, if it could be thus classified, was wholly insufficient to show what is usually and ordinarily found in a personnel file. Consequently, the so-called thumbnail sketch was not enough to make the cards similar to either medical or personnel files. This was especially true as to their total lack of similarity to medical files. Calling the cards similar does not alone make them similar. The facts control. If a cow is called a horse, that does not make it one.
The Freedom of Information Act is recognized by the majority to have been “broadly conceived as it sought to ‘permit access to official information long shielded unnecessarily from public view Environmental Protection Agency v. Mink, 410 U.S. 73, 80, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973)” (emphasis supplied). In providing for Exemptions the Senate Committee pointed out that “[sjuccess lies in providing a workable formula which encompasses, balances, and protects all interests, yet places emphasis on the fullest responsible disclosure ” (emphasis supplied). S.Rep. No. 813, p. 3.
In the Getman case the court stated: “Exemption (6) requires a court reviewing the matter de novo to balance the right of privacy of affected individuals against the right of the public to be informed; and the statutory language ‘clearly unwarranted’ instructs the court to tilt the balance in favor of disclosure.” 146 U.S.App.D.C. 213, 450 F.2d 674. (Emphasis supplied.)
This statement was approved by the same court in the Rural Housing Alliance case (162 U.S.App.D.C. 122,126, 498 F.2d 73, 77).
The clause “a clearly unwarranted invasion of personal privacy” in the Act is obviously one of limitation and not one of expansion. The legislative history of the Act shows this to be true. In Getman v. N. L. R. B., supra, the court pointed out:
“S.Rep. at 9; H.Rep. at 1. The legislative history suggests that use of the ‘clearly unwarranted’ standard is the expression of a carefully considered congressional policy favoring disclosure. At the hearings on the bill various agency spokesmen urged deletion of either the word ‘clearly’ or the entire ‘clearly unwarranted’ phrase so that nondisclosure would have been permitted whenever disclosure would result in any invasion of privacy.” [Including a spokesman for N.L.R.B.]
“Congress, however, refused to delete language it considered critical in limiting the scope of the exemption. See S.Rep. at 9; H.Rep. at 11.” 146 U.S.App.D.C. 213, 450 F.2d 674, n.ll. (Emphasis supplied)
The Senate Report dealing with Exemption 6 states, “It is believed that the scope *1188 of the exemption is held within bounds by the use of the limitation of ‘a clearly unwarranted invasion of personal privacy.’ The phrase ‘clearly unwarranted invasion of personal privacy’ enunciates a policy that will involve a balancing of interests . .” S.Rep. No. 813, p. 9. The House Report dealing with this Exemption contains very similar language, to wit, “The limitation of a ‘clearly unwarranted invasion of personal privacy’ provides a proper balance . . .” H.R.Rep. No. 1497, 89th Cong., 2d Sess., 11 (1966), U.S.Code Cong. & Admin.News 1966, p. 2428. (Emphasis supplied).
It is clear that Congress intended this clause to be one of limitation or restriction and not one of expansion in the interpretation and application of Exemption 6. The foregoing legislative history of the Act indicates that non-disclosure of requested information will be permitted only after it has been determined that it is a personnel, medical, or similar file, and, if so, only if the disclosure would constitute a clearly unwarranted invasion of personal privacy (i. e. the two-step determination). As shown above, the opponents of the Act (including N.L.R.B.) urged deletion by Congress of the word “clearly” and of the entire phrase “clearly unwarranted” so that non-disclosure would be permitted whenever disclosure would result in any invasions of privacy. The Congress refused to delete this language.
It appears to me that in the instant case the majority is doing exactly what the Congress expressly refused to do, in that they first hold that the union cards are personal to the workmen and that disclosure would invade their privacy and, therefore, the cards are similar to personnel files and should not be disclosed. This result has been reached by reverse reasoning and, in my opinion, contrary to the expressed intent and purpose of Congress. Under this holding any invasion of personal privacy would result in non-disclosure regardless of whether the material was a personnel, medical or similar file.
In enacting the Freedom of Information Act Congress intended that the exemptions contained therein be construed and interpreted very broadly so as to allow the fullest possible disclosure of government records. Many courts have so construed the Act. Yet the majority in the instant case have construed the Act very narrowly by holding, in effect, that any material that is personal or private should not be disclosed. This results in a denial of disclosure contrary to the intent of Congress and the interpretation of the Act by many Courts. The test under Exemption 6 should not be whether the material is personal or private, but whether or not it is a personnel, medical or similar file, and, if not, as in the case before us, it must be disclosed.
I would affirm the judgment of the District Court requiring the disclosure of Form 4069, and reverse that part of the judgment permitting non-disclosure of the union cards, and would order the union cards disclosed.[3]

. See 5 U.S.C. § 552(b) (1970 ed. Supp. V), 5 U.S.C.S. § 552(b).

. Contra. Committee on Masonic Homes, etc. v. N. L. R. B., supra. This case is discussed below.

. As a matter of fact, in the present posture of this case, there is little reason for it to be before this court. The questions involved are for all practical purposes moot. The union election has been held and the company won. Consequently, there is no logical reason why the company should maintain this suit to compel disclosure of the union cards, and no logical reason for N.L.R.B. to maintain its cross-appeal from the judgment requiring it to disclose Form 4069. However, the parties are determined to continue the controversy, which appears to be much ado about nothing as far as this case is concerned.