**Smith SIMPSON et al.**

v.

**Cyrus R. VANCE, Secretary of State et al.**

No. 79–1889.

United States Court of Appeals, District of Columbia Circuit.

Argued March 24, 1980.

Decided Sept. 25, 1980.

Diane B. Cohn, Washington, D. C., with whom Barry H. Hager, Washington, D. C., was on brief, for appellants.

Michael J. Ryan, Asst. U. S. Atty., Washington, D. C., with whom Carl S. Rauh, U. S. Atty., Washington, D. C., at the time brief was filed, John A. Terry, Nathan Dodell, Asst. U. S. Attys., and Jeffrey H. Smith, Atty., Dept. of State, Washington, D. C., were on brief, for appellees.

Before WRIGHT, Chief Judge, and SWYGERT * and ROBINSON, Circuit Judges.

Opinion for the Court filed by Circuit Judge SWYGERT.

SWYGERT, Circuit Judge.

In this Freedom of Information Act case, the sole issue presented is whether information contained in a Department of State (Department) publication, which lists employees of the Department and other federal agencies in the field of foreign relations with their educational backgrounds, employment experience, and essential biographical facts, is protected from disclosure under Exemption 6 of the Act.[1] We hold that, except for the facts concerning marital status, Exemption 6 is not applicable to information of this nature and accordingly, reverse the decision of the district court granting summary judgment to the Department.

## I

The plaintiffs in this case are individual diplomatic historians and scholarly organizations. The defendant is the Department of State.[2] The controversy between the parties focuses on a publication of the Department entitled the *Biographic Register* (Register). The Register, which had been publicly available from its inception in the 1880's until 1974, is an annual paperback volume, between 300 and 400 pages in length. It contains an alphabetical listing of over 12,000 senior–level and mid–level Department employees and employees of other federal agencies involved in this country's foreign policy. Each employee entry, which is one paragraph in length, contains items of personal information, including date and place of birth, marital status and name of spouse, educational background, work experience both in the private and public sectors and the individual's promotion history. Much of the information is not publicly available through other publications.[3] The Register is used by agency management and personnel officers in making decisions on the assignment of employees, and employees are told that their cooperation in assuring the accuracy and completeness of the entry concerning them is mandatory.

In 1974 the practice of releasing the Register to the public was halted. The following year the information which traditionally had appeared in the Register was compiled but not kept in book form similar to the pre–1975 publications. Since 1976 the Register has been published in its traditional form, but distributed on a limited basis to selected federal agencies and congressional committees. Additionally, the Register is handled and disseminated in the same manner as "confidential" material, which means that within the Department the Register may be used only by employees who hold security clearance and need to know the information contained in the Register, and that the material must be kept in a safe when not being used.

---

* Of the Seventh Circuit, sitting by designation pursuant to 28 U.S.C. § 291(a) (1976).

1. 5 U.S.C. § 552(b)(6), quoted in text *infra* at note 5.

2. Cyrus Vance, former Secretary of State, was originally named as an additional defendant. On May 7, 1979 the district court *sua sponte* dismissed the complaint as to Vance on the ground that this Freedom of Information Act case lies only against the agency.

3. A full listing of the items contained in an employee's entry in the Register is set forth below:

    (a) Date and place of birth;
    (b) If appropriate, a date of naturalization;
    (c) Educational background–colleges attended; years of attendance; degrees; bar membership;
    (d) Work experience in the private sector, usually noting the years and general career field;
    (e) Military service;
    (f) Other Government experience, both state and local;
    (g) Initial date of appointment to one of the contributing agencies;
    (h) Promotions and dates thereof;
    (i) Assignments by post and/or position title;
    (j) Awards received;
    (k) Foreign languages spoken at the S–3 (speaking) and R–3 (reading) level;
    (*l*) Marital status and name of spouse.
Items (g) through (k) are available to the public through other Department publications.

By letter of April 27, 1978, plaintiffs requested access to the Register for the years 1975, 1976, and 1977, stating that their studies of the functioning and development of the Foreign Service had been impaired by the decision of the Department to discontinue public distribution of the Register. The request was denied by the Department on August 8, 1978 on two grounds: Exemption 6 of the Freedom of Information Act and the Privacy Act, 5 U.S.C. § 552a.[4] The decision was appealed on September 29, 1978. Five months later, plaintiffs, having received no response to their appeal, proceeded with the instant action in the district court. Upon limited discovery and the filing of affidavits by both parties, motions for summary judgment were filed by both sides. Thereafter the district court granted summary judgment for the Department. This appeal followed.

## II

■ The Freedom of Information Act sets forth a policy of broad disclosure of Government documents, where production is properly requested. *Environmental Protection Agency v. Mink*, 410 U.S. 73, 80, 93 S.Ct. 827, 832, 35 L.Ed.2d 119 (1973). Upon receiving a request, an agency may withhold a document, or portions thereof, only if the information contained therein falls within the scope of one of nine statutory exemptions to the disclosure requirement set forth in section 552(b). Exemption 6, which concerns us in this case, exempts from disclosure information which (1) would constitute a "clearly unwarranted invasion of personal privacy" and (2) is contained in "personnel and medical files and similar files."[5] Unless an agency basing a denial of a request for information on Exemption 6 demonstrates that both facets of this statutory test are met, disclosure is required under the Act. *Board of Trade of the City of Chicago v. Commodity Futures Trading Commission*, 627 F.2d 392 (D.C. Cir. 1980) ("*Board of Trade v. CFTC*").

Since the contested documents are neither personnel nor medical files, the district court, in holding that this was an Exemption 6 case, initially determined that the Register was "similar" to medical and personnel files. It then considered the invasion-of-privacy question, concluding that "the privacy interests of the affected individuals outweigh the public's interest in disclosure" and consequently, that disclosure of the Register would be a "clearly unwarranted invasion of personal privacy." In particular, the court stated that because foreign service persons who are overseas are uniquely vulnerable to the threat of physical harm from terrorists and because disclosure of the information contained in the Register could aid terrorists inclined to harm our diplomatic corps in foreign countries, Exemption 6 justified the withholding of the Register.

Plaintiffs contend that the judgment of the district court is erroneous because it has interpreted the term "similar files" too broadly. They argue that the Register does not contain information of the intimate or embarrassing nature which Exemption 6 protects. In addition, they argue that even if some personal privacy interest would be affected by disclosure of the facts contained in the Register, that interest, when balanced against the public interest in disclosure of the requested material, is greatly outweighed.

We hold the district court erred in concluding that Exemption 6 applies to all of the information contained in the disputed documents. In reaching that conclusion, we follow the approach recently discussed in *Board of Trade v. CFTC*. Following a discussion of prior Exemption 6 decisions of this circuit, we stated that in resolving cases based on this Exemption, the court first should focus on the "similar files" element of the Exemption 6 test and, if the material is indeed "personnel and medical and similar files," the court then should determine whether disclosure would constitute a "clearly unwarranted" invasion of

---

**4.** 5 U.S.C. § 552a (1976).

**5.** 5 U.S.C. § 552(b)(6) (1976).

the person's privacy concerns. This latter inquiry is resolved on a case–by–case basis, balancing the privacy interests of the individual against the public's concern in general disclosure. We noted, however, that this "two–prong" approach is not a fixed one:

> In some cases it may be readily apparent to the court that the balance required by the second prong of the test calls clearly for divulgence because, whatever the precise nature of the privacy interest, it is evident that the public benefit gained from making information freely available is far greater. In such instances the court may find that the question whether release of the information would constitute an unwarranted invasion of privacy is simpler to answer than the question whether it constitutes "personnel and medical [or] similar files." If so, the court may well dispose of the matter on the basis of the second facet of the test.

*Board of Trade v. CFTC, supra* at 398 (citation omitted). This court in *Board of Trade v. CFTC, supra,* determined that records of the Commission identifying trade sources who criticized the Board of Trade's performance of commodity future contracts were not "similar files" and thus, did not concentrate on the invasion–of–privacy issue. *Id.* at 398. Similarly, this case can be resolved more simply by focusing on the "similar files" facet of Exemption 6 and accordingly, we need not reach the question of the public interest to be served by disclosure of the Register, which plaintiffs have raised.

■ In *Rural Housing Alliance v. United States Department of Agriculture,* 162 U.S. App.D.C. 122, 126, 498 F.2d 73, 77 (1974), we stated that the purpose of Exemption 6 is to "protect individuals from public disclosure of intimate details of their lives, whether the disclosure be of personnel files, medical files, or other similar files." We also stated that the Exemption was "broadly" conceived to shield individuals, who for a variety of reasons are required to submit personal information to the Government, from a "wide range of embarrassing disclosures." *Id.* This Exemption, like the other eight, is to be narrowly construed. See *e. g.,*

*Vaughn v. Rosen,* 157 U.S.App.D.C. 340, 347, 484 F.2d 820, 823 (1973), *cert. denied,* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974). An examination of the legislative history of the Exemption shows that Congress used the terms "personal and medical files" as examples of records incorporating the type of information–"intimate details" about an individual–which deserves protection. H.R.Rep.No. 1497, 89th Cong., 2d Sess. 11, *reprinted in* [1966] U.S.Code Cong. & Admin.News, pp. 2418, 2428. Because the common denominator to both personnel and medical records is the personal quality of the information contained therein, this court, in fashioning the test for determining whether information is "similar" to personnel and medical files under the Act, said in *Board of Trade v. CFTC* that the data must be "of the same magnitude–as highly personal or as intimate in nature–as that at stake in personnel and medical records." *Board of Trade v. CFTC, supra* at 398. If the personal nature of the information meets this test, then the records which contain such information will fall into the category of "similar files" within the meaning of Exemption 6.

Previous decisions of this court are consistent with the *Board of Trade v. CFTC* test. On one hand, an investigatory report by the Department of Agriculture of governmental housing discrimination disclosing information on "marital status, legitimacy of children, identity of fathers of children, medical condition, welfare payments, alcoholic consumption, family fights, reputation, and so on" was held to be "similar" to "personnel and medical files." *Rural Housing, surpa,* 162 U.S.App.D.C. at 126, 498 F.2d at 77. On the other hand, we held that lists which contain names and addresses of employees eligible to vote in labor representation elections are not protected under Exemption 6, *Getman v. NLRB,* 146 U.S.App.D.C. 209, 213–15, 450 F.2d 670, 674–76, *stay denied,* 404 U.S. 1204, 92 S.Ct. 7, 30 L.Ed.2d 8 (1971), and have agreed with the Fourth Circuit that names and addresses of people whose homes had been constructed on uranium tailings must be dis-

closed. *Board of Trade v. CFTC, supra* at 399, citing *Robles v. EPA*, 484 F.2d 843, 845–48 (4th Cir. 1973). And, most recently, we stated that "no fact of an intimate nature is likely to be revealed" by disclosing the names of trade sources who criticized the defendant's business operations and thus, held the information could not be shielded by Exemption 6. *Board of Trade v. CFTC, supra*, at 400.

■ In light of these precedents, we conclude that most of the information contained in the Register may not be withheld on the basis of Exemption 6. Although there is no dispute that the information which the Department is withholding relates to the employees' private lives, and therefore some privacy interest is present, that interest is not of the "magnitude" such as those warranting protection in personnel and medical files. *Board of Trade v. CFTC, surpa*, at 398.

We reach this conclusion by scrutinizing, line–by–line, the twelve items contained in an employee's entry in the Register.[6] Those items concern basic biographical facts which are objective in nature: the employee's birth date and place (and date of naturalization, if appropriate), educational background, work experience, and military service. That information is followed by the employee's initial date of appointment to a Government position, promotion history, post assignments, awards received, and knowledge of foreign languages. The last item concerns marital status and name of spouse.

With the exception of item *"1"*,[7] the Register does not involve "sufficiently intimate details" of the employee's life nor "embarrassing disclosures" which deserve protection. *Rural Housing, supra*, 162 U.S.App. D.C. at 126, 498 F.2d at 77. There is no information about the individual's financial situation, his medical condition or history,

or opinions from his employer concerning job reliability, such as in *Rural Housing*; nor is there a listing of grades for his academic endeavors or conclusions from his employer concerning job qualifications and competence–all of which we might consider sufficiently personal to deserve protection. What the Register discloses is no more personal or confidential than either a resume which the individual, as a prospective employee, might have submitted to the Department when applying for his position or the well–known Civil Service Commission Form 171.

Our view that the Register, with one exception discussed below, does not contain information of a potentially embarrassing or stigmatizing nature within the scope of Exemption 6 is supported by the fact that similar information, until 1975, had been placed in the public domain by the Department. That practice was allegedly stopped not to prevent further disgrace or embarrassment to the individuals, but on the ground that it might deter threats of physical harm from terrorists to United States diplomatic personnel overseas. Additionally, the district court noted that there was no expectation of confidentiality on the part of those individuals whose names were contained in the Register before 1975. According to the record, the great majority of the employees included in the volumes of the Register now being withheld have had a similar entry appear in one or more previous volumes of the Register. Moreover, the record reveals by the uncontroverted affidavit of Mr. Lars H. Hydle that there is no desire for confidential treatment of the Register on the part of "most" foreign service employees. That statement was based on a survey taken by the American Foreign Service Association (AFSA), who is not a party in this case,[8] to determine the atti-

---

6. See note 3 *supra*.

7. See Part III *infra*.

8. AFSA is a professional society of active and retired foreign service employees and serves as

the official bargaining agent for active–duty foreign service employees of the Department and the Agency for International Development. More than one–half of the Foreign Service corps are members.

tude of foreign service employees on publication of the Register. Less than 300 employees responded (4.7% of the total members of the AFSA). Of those, however, 238 favored publication of the Register, while 24 opposed it. Also, 263 agreed that their personal biographic information should be published and 10 opposed that.

Finally, portions of the data are currently available to the public, which reinforces the nonintimate nature of this material. Civil Service regulations require that most federal employees' names, position titles, grades, salaries, both past and present, be disclosed to the public. 5 CFR § 294.702 (1980). Facts concerning date and state of birth are matters of public record. Items g through k of the entry are currently available to the public through other State Department publications. Similar biographic information about some Ambassadors and Assistant Secretaries of State is published in *Who's Who*. In summary, we consider the term "similar files" within the meaning of Exemption 6 is inapplicable to most of the facts contained in the Register.

The Department makes two arguments which warrant discussion. First, it contends that the withheld volumes of the Register meet the "similar files" facet of the Exemption 6 test since the items of information contained in the Register, at least for State Department employees, were extracted from their personnel files. In substance, it argues, the Register is a more limited version of the customary personnel file and as such, warrants protection. The district court, in concluding that the withheld volumes of the Register constituted "similar files," agreed with the Department. Additionally, the district court found that because the Register "contains

information normally found only in personnel files," it could be labeled a "similar file" within the meaning of Exemption 6.

We simply don't believe that since the facts at issue also appear in personnel records of the employees, or are of the type that generally appear therein, they are presumptively exempt from disclosure under the Act. To do so, we would be placing form over substance in determining when Exemption 6 is applicable. The proper approach, as discussed in *Department of Air Force v. Rose*, 425 U.S. 352, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976), is to look behind the name given to the records containing the withheld information and determine whether the information is of the type which falls within the scope of Exemption 6.[9] After analyzing the legislative history of Exemption 6, the Court specifically rejected the argument raised by the Agency, like the Department in substance raises here, that "personnel files" are wholly exempt from disclosure:

> Congressional concern for the protection of the kind of confidential data usually included in a personnel file is abundantly clear. But Congress also made clear that nonconfidential matter was not to be insulated from disclosure merely because it was stored by the Agency in "personnel" files.

*Id.* at 425 U.S. at 372,[10] 96 S.Ct. at 1604. The Court also shed light on the meaning of the term "similar files" by discussing the factors which distinguished that type of file from a personnel one under the circumstances in the case:

> Two attributes of the case summaries require that they be characterized as "similar files." First, they relate to the discipline of cadet personnel, and while

---

9. In *Department of Air Force v. Rose, supra*, 425 U.S. at 376–77, 96 S.Ct. at 1606, the Supreme Court held that Air Force Academy case summaries relating to the discipline of cadets constituted "similar files" to the extent that they could only be disclosed after excision of names and other identifying facts.

10. The Court then stated that a balancing of the individual's right of privacy against the public's right of disclosure must be undertaken. Although no balancing of interests is undertaken here, see text *supra* at p. 7, the failure to do so does not affect the interpretation which the *Rose* Court has given to the term "personnel" files.

even Air Force Regulations themselves show that this single factor is insufficient to characterize the summaries as "personnel files," it supports the conclusion that they are "similar." Second, and most significantly, the disclosure of these summaries implicates similar privacy values; . . . "identification of disciplined cadets–a possible consequence of even anonymous disclosure–could expose the formerly accused men to lifelong embarrassment, perhaps disgrace, as well as practical disabilities, such as loss of employment or friends." . . . But these summaries, collected only in the Honor and Ethics Code reading files and the Academy's honor records, do not contain the "vast amounts of personal data," . . . which constitute the kind of profile of an individual ordinarily to be found in his personnel file: showing, for example, where he was born, the names of his parents, where he has lived from time to time, his high school or other school records, results of examinations, evaluations of his work performance. Moreover, access to these files is not drastically limited, as is customarily true of personnel files, only to supervisory personnel directly involved with the individual (apart from the personnel department itself), frequently thus excluding even the individual himself. On the contrary, the case summaries name no names except in guilty cases, are widely disseminated for examination by fellow cadets, contain no facts except such as pertain to the alleged violation of the Honor or Ethics Codes, and are justified by the Academy solely for their value as an educational and instructional tool the better to train military officers for discharge of their important and exacting functions.

*Id.* 425 U.S. at 376–77, 96 S.Ct. at 1606 (citations omitted). Based on these comments of the Court, we think it is of no value for the Government to argue that the Register is a "similar file" because its data were extracted from "personnel files." First, the requested documents are not the Department's personnel files nor do they have the trappings of pure personnel files which warrant protection. The Department surely maintains other documents containing reports, records, and other papers concerning personnel matters, which plaintiffs have not sought. Although the Department states that the Register is used by administrative and managerial officers for personnel matters, there is no evidence that the Department compiled the information incorporated in the Register in fulfillment of that particular purpose. The Register is comprised of neutral extractions from personnel records which the Department obviously believed could be made without comprising its personnel data. Additionally, the practice of dissemination distinguishes the Register from "personnel" material. As noted in *Rose*, personnel records are customarily accessible only to supervisory personnel directly involved with the employee and the personnel department itself. Here, the Register is distributed to Congressional committees, select agencies, and within the Department itself. Thus, the Register could fall into not only the hands of nonsupervisory people but also those of an individual employee's subordinate. Second, although all of the information can be found in a personnel file, much of it is not, as we noted earlier, of the personal quality which warrants protection under Exemption 6. In summary, the Department has set up a smoke–screen by arguing that the Register is "similar" to a personnel file since the information was extracted from personnel files. When the smoke fades, it becomes clear to us that the Register is neither a "personnel" file nor "similar" to personnel files within the meaning of the Act.

The Department also contends that by linking the information contained in the Register with the fact that foreign service officers and other State Department employees are particularly vulnerable to the threat of physical harm from terrorists, withholding the information under Exemption 6 is proper to protect diplomatic per-

sonnel overseas from physical harm rendered by terrorists who could use the Register's information to justify their conduct. The district court considered this argument persuasive when engaging in the balancing facet of Exemption 6.

In our inquiry we need not reach the question of balancing. The information contained in the Register does not fall within the meaning of "personnel" files or "similar" files, and the additional fact that foreign service personnel are subject to terrorist attacks does not change the personal quality of the information contained in the materials at issue: no fact of an intimate nature or no embarrassing disclosure suddenly appears because we are told that the information might be abused by terrorists once disclosed.

We, of course, understand the concern of the Department in minimizing the risks of violence against our foreign service personnel and that protecting the identity of these individuals may serve that end. By claiming that the Register may be withheld on the basis of Exemption 6, however, the Department is attempting to fit a square peg in a round hole: Congress did not design Exemption 6 to encompass the withholding of information on the basis of the physical security of foreign service personnel abroad from terrorist attacks. What we hold today is no broader than that where Exemption 6 is at issue, the Department's concern may not find refuge.

### III

Based on our decision in *Rural Housing, supra,* we recognize that the disclosure of an individual's marital status and name of spouse, which is the final information set forth in an employee's entry in the Register, would not be appropriate. The fact that such information exists in the disputed material, however, does not justify the Department's withholding the remainder from disclosure. The Act provides that where

only part of a document may be withheld under an exemption, the Government must segregate the exempt passages and disclose the remainder. 5 U.S.C. § 552(b).[11] The Department maintains that it would not be reasonable to segregate the nonexempt information from the exempt data in this case for two reasons. First, it argues that the nonexempt data is "so closely intertwined" with the exempt information that segregation is not possible. In light of our holding that only item *"1"* is exempt, we reject this argument. The Department also argues that a review of materials of the magnitude involved in this case would be unreasonably burdensome to the State Department. (It complains that anywhere from 31,000 to 36,000 entries would have to be manually reviewed.) We don't view the review process as burdensome as the Department opines. And, as the plaintiffs point out, no new spouses' names were requested by the Department for inclusion in the 1976 or 1977 Register volumes.

In its order, the district court did not address the issue of segregability. We do not believe, however, a remand of this issue to the district court is necessary in view of the limited segregation which must be undertaken in this case by the Department. Accordingly, we order the release of the Register, with the exception of item *"1"* in the employee entry.

The judgment of the district court is reversed, and the district court is directed to enter judgment consistent with this opinion.

---

11. 5 U.S.C. § 552(b) (1976).