Ms. Lucinda McDaniel Womack, Landis, Phelps, McNeil McDaniel 301 S. Washington P.O. Box 3077 Jonesboro, Arkansas 72403
Dear Ms. McDaniel:
This is in response to your request, pursuant to The Arkansas Freedom of Information Act ("FOIA"), A.C.A. 25-19-105 (c)(3)(B) (Cum. Supp. 1993), for an opinion regarding the release of records pertaining to former Arkansas State University President John Mangieri. Specifically, you have attached a local television station's request for ten items of information. You have asked my opinion on the "propriety" of releasing the last two listed items, which are as follows:
 9. All records pertaining to the investigation that resulted in the termination of John Mangieri as President of Arkansas State University;
 10. All personnel records pertaining to John Mangieri.
You state that it is your understanding that personnel records are not generally subject to disclosure under the Freedom of Information Act, but are concerned about the release of "employee evaluation or job performance records" under A.C.A.25-19-105(c)(1). Specifically, you note that statements alleging improper actions are contained in Dr. Mangieri's personnel file. You also state that these records formed a basis for the decision to terminate Dr. Mangieri. Your specific question is as follows:
 Are those statements, and the other materials in Dr. Mangieri's personnel file, subject to disclosure? As Dr. Mangieri is a public employee, is there a compelling public interest in their disclosure?
I will first address the "statements" you mention, and then will address the "other materials" in Dr. Mangieri's personnel file.[1]
It is my understanding that the statements at issue may involve allegations of sexual misconduct. This office has previously opined that such statements, given by other employees, are "job performance records" for purposes of the FOIA. See e.g. Op. Att'y Gen. Nos. 92-310 (written allegations of sexual harassment by employees against other employee are job performance records) and 88-162 (statements taken as part of an investigation into an allegation of sexual harassment are job performance records). Even if the statements detail "improper actions" unrelated to sexual misconduct, it is my opinion that they will constitute "job performance records" to the extent they detail the performance or lack of performance of the employee, within the scope of his employment, regarding a specific incident or incidents. See Op. Att'y Gen. 93-185.
The FOIA provides that "job performance records," including preliminary notes and other materials, shall be open to public inspection only upon final administrative resolution of any suspension or termination proceeding at which the records form a basis for the decision to suspend or terminate the employee, and if there is a compelling public interest in their disclosure. A.C.A. 25-19-105(c)(1). It is my understanding that a final administrative resolution of the matter has been had, and you have stated that the records formed a basis for the termination of Dr. Mangieri. Thus, the only remaining question is whether there is a "compelling public interest" in the disclosure of these records.
The Attorney General's office has, in two separate opinions, found a "compelling public interest" in the release of "job performance records" relating to sexual misconduct. See Op. Att'y Gen. 93-356 (records containing allegations of sexual misconduct of school superintendent give rise to compelling public interest); 89-073 (job performance records relating to sexual misconduct of police officers gives rise to a compelling public interest). In the latter opinion, it was stated as follows:
 Both the courts and legislature acknowledge that the public has a compelling interest in seeing that its employees not only follow the law, but also the regulations by which they are to conduct their business. If that trust is breached, the public has a right to know.
Op. Att'y Gen. 89-073 at 2, citing Op. Att'y Gen. 87-115.
It is therefore my opinion, based upon the opinions outlined above, that there is a compelling public interest in the release of these "job performance records," and they are thus disclosable under the FOIA.
Your remaining question involves the release of certain "other materials" in Dr. Mangieri's personnel file. To the extent that these materials are "job performance records," that is, records which detail the performance or lack of performance of an employee, within the scope of his employment, regarding a specific incident or incidents (see Op. Att'y Gen. 93-185), or preliminary notes and other materials relating to job performance, the test set out above will apply.
To the extent the records are "personnel records," a different analysis is employed. Contrary to your understanding, personnel records are disclosable under the FOIA except "to the extent" their release would constitute a "clearly unwarranted invasion of personal privacy." As such, any exempt information (information the disclosure of which would constitute a clearly unwarranted invasion of personal privacy) should be deleted from personnel records and the remainder of the records made available for inspection and copying.
In determining what information, if released, would constitute a "clearly unwarranted invasion of personal privacy," the Arkansas Supreme Court has adopted a balancing test. It was stated in Young v. Rice, 308 Ark. 593, 826 S.W.2d 252 (1992), that:
 The fact that section 25-19-105(b)(10) exempts disclosure of personnel records only when a clearly unwarranted personal privacy invasion would result, indicates that certain `warranted' privacy invasions will be tolerated. Thus, section 25-19-105(b)(10) requires that the public's right to knowledge of the records be weighed against an individual's right to privacy. . . . Because section 25-19-105(b)(10) allows warranted invasions of privacy, it follows that when the public's interest is substantial, it will usually outweigh any individual privacy interest and disclosure will be favored.
308 Ark. at 598.
In Young, the court upheld the denial of access to the names of police officers participating in the lieutenant promotion examination proceedings, but allowed release of the records of the examination with the names deleted. The court relied upon federal case law which finds a substantial privacy interest in records relating the intimate details of a person's life, including any information that might subject the person to embarrassment, harassment, disgrace, or loss of employment or friends. The court found that some of the actions of the police officers when taking the role-playing portion of the examination were "embarrassing behaviors" touching on intimate details of the candidate's lives, and the release of the information could subject them to embarrassment and perhaps threaten future employment. The court therefore found a substantial privacy interest in the records. The court also found a substantial public interest in the records, but concluded that the public's interest was satisfied by the release of the examination records with the candidate's names deleted.
Other federal case law, like that relied upon in Young, delineates other types of information the release of which might constitute a "clearly unwarranted invasion of personal privacy." The following specific information has been exempted from public disclosure through judicial interpretation: personal histories; religious affiliations of employees, Church of Scientology v. Department of Defense, 611 F.2d 738 (9th Cir. 1979); citizenship, United State Department of State v. Washington Post Co.,456 U.S. 595 (1982); marital status, Simpson v. Vance, 648 F.2d 10 (D.C. Cir. 1980); social security numbers, Swisher v. Dept. of the Air Force, 660 F.2d 369 (5th Cir. 1981); information about family life, Providence Journal Co. v. F.B.I., 460 F.Supp. 778, reversed on distinct grounds, 602 F.2d 1010 (1st Cir. 1979); information regarding welfare payments, legitimacy of children, family rights, and alcohol consumption, Rural Housing Alliance v. Department of Agriculture, 498 F.2d 73 (D.C. Cir. 1974).
In contrast, courts have found relatively little privacy interest in records revealing names, date and place of birth, salaries of public employees, training or education background, and work experience. Kruzon v. Department of Health Human Services,649 F.2d 65 (1st Cir. 1981) and Simpson v. Vance, 648 F.2d 10 (D.C. Cir. 1980).
Other records, however, whether or not contained in a personnel file, such as medical, scholastic, adoption or tax information, are exempted by specific provisions of the FOIA. See A.C.A.25-19-105(b).
I have not been provided with the "other materials" in Dr. Mangieri's personnel file to which you refer. I cannot, therefore, offer a conclusive response as to these records. The precepts above should offer guidance in assessing whether each record is disclosable under the FOIA. It is my opinion, however, that the facts you have outlined are, to a great degree, distinguishable from the facts giving rise to the public interest in Young. In my opinion, records relevant to the termination of a high ranking official at a state university, on grounds of misconduct, will generally give rise to a greater public interest than records relating to current police officers' performance on a promotions examination. As stated in Arkansas Freedom of Information Act, supra at 130: "The `public interest' will ordinarily be great when there is a need for oversight to prevent wrongdoing or when the requested records would inform the public about agency misbehavior or other violations of the public trust." Additionally, the Arkansas Supreme Court has stated that where the public's interest is substantial it will usually outweigh any individual privacy interest and disclosure will be favored. Young, supra at 598.
One final issue relevant to the release of these records should be noted. In some instances a constitutional Fourteenth Amendment "right to privacy" may arise with regard to the release of documents under the FOIA. The leading Arkansas case on the question is McCambridge v. City of Little Rock, 298 Ark. 219,766 S.W.2d 909 (1989). I have enclosed for your review a copy of Op. Att'y. Gen. 93-356, which fully discusses this right. It was concluded in Opinion 93-356 that a school superintendent's constitutional privacy interest in the release of particular information relating to sexual misconduct (information which in that case could be classified as a "personal matter" under McCambridge), was lessened in light of the fact that the superintendent held a position of high authority in the school district, he requested a public hearing on the matter, and he continued to hold a position of public trust in the public schools. It was therefore concluded that his privacy interest was outweighed by the public's interest in the information. Any determinations regarding the constitutional rights of Dr. Mangieri with regard to the release of this information will have to be made in light of the information contained in the records and in view of all the surrounding facts and circumstances. In the absence of this information, I cannot provide a definitive answer with regard to this issue.
The foregoing opinion, which I hereby approve, was prepared by Deputy Attorney General Elana C. Wills.
Sincerely,
WINSTON BRYANT Attorney General
WB:cyh
[1] It should be noted that the request for information is for all "personnel records" pertaining to John Mangieri. Neither the request, therefore, nor A.C.A. 25-19-105(b)(10), is limited to information contained in a "personnel file;" each apply to any record pertaining to personnel. See Op. Att'y Gen. Nos. 88-068
and 87-115, and J. Watkins, Arkansas Freedom of Information Act 125 (2d ed. 1994).