Mr. Burnett M. Robertson 1519 North 38th Street Fort Smith, Arkansas 72904-6918
Dear Mr. Robertson:
This is in response to your request, pursuant to A.C.A. §25-19-105(c)(3)(B), for an opinion on whether the decision of your employer, the Arkansas Department of Human Services (the "Department"), to open certain documents to public inspection and copying is consistent with the Arkansas Freedom of Information Act, A.C.A. §§ 25-19-101 to -107 (Repl. 1992 and Supp. 1995) (the "Act"). Your request indicates that a representative of the press has requested a copy of your "personnel file" and that the Department has determined to make the documents contained therein available. Your request indicates that you recently were suspended from your employment for five days, and that, in connection with the suspension, you filed, or attempted to file, an "Employee Grievance" with the Department's "EEO Grievance office." You state that no hearing on your grievance has yet been held. Your request does not include a copy of the press request directed to the Department or the Department's reply, if any, to the press request. Neither does your request include copies of the documents at issue or a description of the documents. Without further information, it is impossible for this office to render a conclusive opinion with respect to whether the Department's decision to release any or all of the records in your "personnel file" is consistent with the Act. I will, however, outline below the Act's provisions relating to the release of records of the type that one might ordinarily expect to find in such a file.
Many of the documents in your "personnel file" likely are "personnel records," which are addressed by A.C.A. § 25-19-105(b)(10) (Supp. 1995). Such records are exempt from public disclosure under that section of the Act only to the extent that disclosure would constitute a "clearly unwarranted invasion of personal privacy." In Young v. Rice,308 Ark. 593, 598, 826 S.W.2d 252 (1992), the court described the test used to determine whether a release of personnel records would constitute such an invasion of privacy:
 The fact that section 25-19-105(b)(10) exempts disclosure of personnel records only when a clearly unwarranted personal privacy invasion would result, indicates that certain `warranted' privacy invasions will be tolerated. Thus, section 25-19-105(b)(10) requires that the public's right to knowledge of the records be weighed against an individual's right to privacy. . . . Because section 25-19-105(b)(10) allows warranted invasions of privacy, it follows that when the public's interest is substantial, it will usually outweigh any individual privacy interest and disclosure will be favored.
In Young, the court upheld the denial of access to the names of police officers participating in lieutenant promotion examination proceedings, but allowed release of the records of the examination with the names deleted. The court relied upon federal case law which holds there is a substantial privacy interest in records relating the intimate details of a person's life, including any information that might subject the person to embarrassment, harassment, disgrace, or loss of employment or friends. The court found that some of the actions of the police officers when taking the role-playing portion of the examination were "embarrassing behaviors" touching on intimate details of the candidates' lives, and the release of the information could subject them to embarrassment and perhaps threaten future employment. The court therefore found a substantial privacy interest in the records. The court also found a substantial public interest in the records, but concluded that the public's interest was satisfied by the release of the examination records with the candidates' names deleted.
Other federal case law, like that relied upon in Young, delineates other types of information the release of which might constitute a "clearly unwarranted invasion of personal privacy." The following specific information has been exempted from public disclosure through judicial interpretation: personal histories; religious affiliations of employees,Church of Scientology v. Department of Defense, 611 F.2d 738 (9th Cir. 1979); citizenship, United States Department of State v. Washington PostCo., 456 U.S. 595 (1982); marital status, Simpson v. Vance, 648 F.2d 10
(D.C. Cir. 1980); social security numbers, Swisher v. Department of theAir Force, 660 F.2d 369 (5th Cir. 1981); information about family life,Providence Journal Co., v. F.B.I., 460 F.Supp. 778, reversed on distinctgrounds, 602 F.2d 1010 (1st Cir. 1979); information regarding welfare payments, legitimacy of children, family rights, and alcohol consumption,Rural Housing Alliance v. Department of Agriculture, 498 F.2d 73 (D.C. Cir. 1974).
In contrast, courts have found relatively little privacy interest in records revealing names, date and place of birth, salaries of public employees, training or education background, and work experience. Kruzonv. Department of Health Human Services, 649 F.2d 65 (1st Cir. 1981);Simpson v. Vance, 648 F.2d 10 (D.C. Cir. 1980).
Thus, the test to determine to what extent personnel records are exempt from disclosure under the Act is an objective test which has been developed through case law. As this office has previously stated, the fact that the subject of the records may consider the release of the records to be a clearly unwarranted invasion of personal privacy is not relevant to the analysis. Op. Att'y Gen. 93-055; see also Watkins, TheArkansas Freedom of Information Act 126 (mm Press, 2d ed. 1994). Consistent with the foregoing, the appropriate procedure for the custodian of personnel records to follow, therefore, is to delete any exempt information and make the remainder of the records available for inspection and copying.
It should be noted that certain other records that may be contained in a "personnel file" are exempt from disclosure under other provisions of the Act. See A.C.A. §§ 25-19-105(b)(1) (state income tax records) and25-19-105(b)(2) (medical records, scholastic records, and adoption records). See also Op. Att'y Gen. 91-093 (certain withholding records).
Finally, it should be noted that the Act contains a separate exemption from disclosure for "employee evaluation or job performance records." Such records are those that detail an employee's performance or lack of performance with regard to a specific incident or incidents. See, e.g.,
Op. Att'y Gen. 95-171, 94-391, 91-324. Employee evaluation or job performance records are open to public inspection "only upon final administrative resolution of any suspension or termination proceeding at which the records form a basis for the decision to suspend or terminate the employee and if there is a compelling public interest in their disclosure." A.C.A. § 25-19-105(c)(1). All of the elements set forth in the statute must be present in order for such records to be subject to disclosure: the employee must have been suspended or terminated; the records must have formed a basis for the disciplinary action; the action must have had its final administrative resolution; and there must be a compelling public interest in disclosure. Without additional information, it is impossible for this office to determine whether any such records are at issue here or, if so, whether all of the conditions to disclosure have been met (and, in particular, whether the pendency of your "grievance" proceeding means that your suspension proceeding has not been finally resolved). The records custodian must, however, take these factors into account when making decisions regarding disclosure.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General J. Madison Barker.
Sincerely,
WINSTON BRYANT Attorney General
WB:JMB/cyh