Mr. Robert A. Newcomb Attorney at Law 400 West Capitol First Commercial Building, Suite 1700 Little Rock, Arkansas 72203-0149
Dear Mr. Newcomb:
This is in response to your request for two opinions, pursuant to A.C.A. § 25-19-105(c)(3)(B), inquiring as to what parts of the personnel files of your two clients, Mr. Greg Sims and Mr. Mike Nichols, former deputy sheriffs for Pulaski County, are subject to inspection and copying under the Arkansas Freedom of Information Act ("FOIA"), codified at A.C.A. §§25-19-101 to -107 (1987 and Supp. 1995). You note, in separate letters with regard to each client, that each was employed by the Pulaski County Sheriff's office until their respective resignations on March 13, 1997. You indicate that the Arkansas Democrat-Gazette has requested copies of both Mr. Sims' and Mr. Nichols' personnel files. You note that your clients specifically object to the release of anything other than their "letter[s] of termination" and salary records while employed, and only consent to the release of the latter documents as long as they have no identification as to home address or social security number. You note that both your clients have unlisted phone numbers and hence unlisted addresses. Finally, your clients specifically object to the release of any investigation that may have been conducted concerning them that did not conclude in disciplinary action. For purposes of efficiency, because the issues presented are identical as to each client, your requests have been consolidated for response in this opinion.
I must note that I have not been provided the records in question. I therefore cannot make a conclusive determination as to the disclosability of any particular records. In addition, you have not indicated whether the custodian of the records has made a decision as to the release of these records and if so, what that decision was. I therefore cannot, as is contemplated under A.C.A. § 25-19-105(c)(3)(B), opine as to whether the decision of the custodian is correct. I can, however, set out the relevant tests for determining whether employment related records are open to public inspection and copying placing particular emphasis on the areas of your concern.
The disclosability of particular employee-related records depends upon whether they constitute "personnel records" or "employee evaluation or job performance records." The FOIA sets forth different standards for the disclosure of the two types of records. Because the documents that have been requested could be classified, depending upon their individual nature, as "personnel records" or as "employee evaluation or job performance records," I will discuss the standards applicable to both categories of records.
Under the provisions of the FOIA, "personnel records" are subject to disclosure except to the extent that disclosure would constitute a "clearly unwarranted invasion of personal privacy." A.C.A. §25-19-105(b)(10).
The FOIA does not define the phrase "personnel records," nor has the term been defined judicially. I will point out, however, that Professor John Watkins, the leading scholarly commentator on the Arkansas FOIA, has provided some guidelines for determining whether records constitute "personnel records." Professor Watkins suggests that the records maintained in personnel files be considered as a starting point for determining what constitutes a "personnel record." The records maintained in such files, Professor Watkins points out, include applications for employment, resumes, grade transcripts, payroll related documents (including information as to reclassifications, promotions, or demotions), transfer records, health and life insurance forms, performance evaluations and ratings, letters of recommendation, complaints, requests for leave without pay, certificates for advanced education or training programs, and legal documents (such as garnishment orders and subpoenas). John Watkins, Arkansas Freedom of Information Act
125-126 (2d ed. 1994). Again, however, Professor Watkins names these personnel file records as constituting only a starting point, and he notes that the language of the FOIA is broad enough to encompass other records pertaining to personnel. He specifically recommends, for example, that materials such as interview notes, records showing annual leave and sick leave, equal employment opportunity grievance files, workers' compensation documents, and medical records, although not included in personnel files, also be considered personnel records. (It should be noted that some of the records mentioned above may be subject to specific exemptions set forth in other sections of the FOIA, including the exception for employee evaluation and job performance records, discussed in a later section of this opinion.)
Neither does the FOIA define the phrase "clearly unwarranted invasion of personal privacy." The Arkansas Supreme Court, however, has construed the phrase. In determining which disclosures constitute a "clearly unwarranted invasion of personal privacy," the Arkansas Supreme Court has adopted a balancing test. The court stated in Young v. Rice, 308 Ark. 593,826 S.W.2d 252 (1992):
 The fact that section 25-19-105(b)(10) exempts disclosure of personnel records only when a clearly unwarranted personal privacy invasion would result, indicates that certain `warranted' privacy invasions will be tolerated. Thus, section 25-19-105(b)(10) requires that the public's right to knowledge of the records be weighed against an individual's right to privacy. . . . Because section 25-19-105(b)(10) allows warranted invasions of privacy, it follows that when the public's interest is substantial, it will usually outweigh any individual privacy interest and disclosure will be favored.
In Young, the court upheld the denial of access to the names of police officers participating in the lieutenant promotion examination proceedings, but allowed release of the records of the examination with the names deleted. The court relied upon federal case law that finds a substantial privacy interest in records relating the intimate details of a person's life, including any information that might subject the person to embarrassment, harassment, disgrace, or loss of employment or friends. The court found that some of the actions of the police officers when taking the role-playing portion of the examination were "embarrassing behaviors" touching on intimate details of the candidates' lives, and the release of the information could subject them to embarrassment and perhaps threaten future employment. The court therefore found a substantial privacy interest in the records. The court also found a substantial public interest in the records, but concluded that the public's interest was satisfied by the release of the examination records with the candidates' names deleted.
Other federal case law, like that relied upon in Young, delineates other types of information, the release of which might constitute a "clearly unwarranted invasion of personal privacy." The following specific information has been exempted from public disclosure through judicial interpretation: Personal histories, religious affiliations of employees,Church of Scientology v. Department of Defense, 611 F.2d 738 (9th Cir. 1979); citizenship, United States Department of State v. Washington PostCo., 456 U.S. 595 (1982); marital status, Simpson v. Vance, 648 F.2d 10
(D.C. Cir. 1980); social security numbers, Swisher v. Dept. of the AirForce, 660 F.2d 369 (5th Cir. 1981); information about family life,Providence Journal Co. v. F.B.I., 460 F. Supp. 778, reversed on distinct grounds, 602 F.2d 1010 (1st Cir. 1979); information regarding welfare payments, legitimacy of children, family rights, and alcohol consumption,Rural Housing Alliance v. Department of Agriculture, 498 F.2d 73 (D.C. Cir. 1974).
In contrast, courts have found relatively little privacy interest in records revealing names, date and place of birth, salaries of public employees, training or education background, and work experience. Kruzonv. Department of Health Human Services, 649 F.2d 65 (1st Cir. 1981);Simpson v. Vance, 648 F.2d 10 (D.C. Cir. 1980).
Finally, it should be noted that this office has consistently taken the position that the fact that the subject of the records may consider the release of the records to be a clearly unwarranted invasion of personal privacy is not relevant to the analysis. See Ops. Att'y Gen. 94-198, 94-178 and 93-055. See also John Watkins, The Arkansas Freedom ofInformation Act 126 (2d ed. 1994).
The foregoing test is to be used in determining whether the records that have been requested are disclosable (or are exempt from disclosure) as "personnel records." A substantial portion of the "personnel records" may be subject to disclosure. The only records (or portions of records) that may be shielded are those the release of which would give rise to a "clearly unwarranted invasion of personal privacy" or which are exempted by some other specific exception, such as the exemption for scholastic or medical records or the exemption for "employee evaluation or job performance records" discussed below. The exempt portions should be excised and the remainder made available for inspection and copying.
With regard to the items you have specifically mentioned, in my opinion salary records are clearly subject to inspection and copying under the FOIA. See, e.g., Ops. Att'y Gen. 95-167; 95-070; and 94-198. If indeed your clients' telephone numbers and addresses are not listed in directory services, this information should be shielded from public inspection under A.C.A. § 25-19-105(b)(10). See Ops. Att'y Gen. 95-256; 95-242; 94-198; 94-113; and 93-131. Social security numbers are also, in my opinion, exempt from public inspection and copying. See, e.g., Ops. Att'y Gen. 95-256; 95-242; 95-113; 95-110; 94-187; and 94-178. With regard to "letter[s] of termination" it is unclear to me whether you mean to indicate the "letter of resignation" written by each of your clients, or whether in fact the Sheriff's department actually issued "letters of terminations" to your clients, thus evidencing that they were terminated. I assume that your reference is to the former, as you indicate in your request, and it is my understanding, that the officers in question resigned. I have previously opined that resignation letters are generally "personnel records" for purposes of the FOIA, and that a statement detailing the employee's intent to cease employment on a certain date does not implicate the privacy concerns reflected in A.C.A. § 25-19-105(b)(10) so as to be exempt from disclosure. See Ops. Att'y Gen. 97-063; 95-169; 95-162 and 89-077. If the resignation letter includes more detailed information of a personal nature, however, it may be exempt form disclosure. See, e.g., Op. Att'y Gen. 96-088. Investigation records are discussed below.
As noted above, a different test applies to employee evaluation or job performance records. Under the provisions of the FOIA, "employee evaluation or job performance records" (including "preliminary notes and other materials") are disclosable only if the following conditions have been met: (1) There has been a final administrative resolution of any suspension or termination proceeding; (2) The records in question formed a basis for the decision made in that proceeding to suspend or terminate the employee; and (3) There is a compelling public interest in the disclosure of the records in question. A.C.A. § 25-19-105(c)(1).
The FOIA does not define the phrase "employee evaluation or job performance record," nor has the phrase been construed judicially. The custodian of the records must make a factual determination as to whether records constitute employee evaluation or job performance records. Formal, written employee evaluations are of course included. In addition, this office has previously opined that documents such as written reprimands and letters of caution, documents upon which a recommendation for dismissal was based, and letters related to promotions and demotions are "job performance records." See, e.g., Ops. Att'y Gen. Nos. 93-105, 93-055, 92-231, 92-191, 91-324, and 91-303. In Opinion No.91-324, I opined that records pertaining to disciplinary action generally fall within the provisions of the FOIA involving "employee evaluation or job performance records." In addition, this office has stated that internal affairs investigation records, if produced as a part of the investigation, can be classified as "employee evaluation or job performance records." See Ops. Att'y Gen. 96-257; 96-168; 93-420; 92-319; 91-296; 91-153 and 89-073.
"Employee evaluation or job performance records" are not subject to disclosure unless there has been a final administrative resolution of a suspension or termination decision. If the employees in question have not been "suspended" or "terminated" their employee evaluation or job performance records are not subject to disclosure. The requested records can be disclosed only if they formed a basis for a final suspension or termination and if it is determined that there is compelling public interest in their disclosure, as discussed below. You have stated that both of your clients "resigned." I have previously concluded that a resignation is not a "termination" for purposes of A.C.A. §25-19-105(c)(1). See, e.g., Ops. Att'y Gen. 92-266; 90-295 and 88-094. If the officers resigned, and were not terminated, in my opinion their employee evaluation and job performance records, including those relating to any investigation of their job performance, are not subject to inspection and copying. If, however, they were terminated, in my opinion the investigative records would be subject to inspection and copying upon final resolution of any administrative appeals because in my opinion there would be a compelling public interest in their disclosure.
The phrase "compelling public interest" is not defined in the FOIA. Clearly, whether there is a "compelling public interest" in the release of particular records will depend upon all of the facts and circumstances attendant to the particular case. Professor Watkins has provided some guidelines for determining whether such an interest exists. He states: "The nature of the problem that led to [a] suspension or termination will undoubtedly bear on the `compelling public interest. . . .' The public's interest in disclosure is most likely to be compelling when the records reflect a breach of trust or illegal conduct by public employees. . . . However, the mere fact that an employee has been suspended or terminated does not mean that the records should be made public; if that were the case, the `compelling public interest' phrase would be a redundancy. . . ." John Watkins, The Arkansas Freedom of Information Act
135 (2d ed. 1994). In this regard, Professor Watkins also states: "A general interest in the performance of public employees should not be considered compelling, for that concern is, at least theoretically, always present." Id. at 137. Professor Watkins has also noted that the status of the employee, or "his rank within the bureaucratic hierarchy," may also be relevant in determining whether a "compelling public interest" exists. Watkins, supra at 136 (noting that "[a]s a practical matter, courts may be more likely to find such an interest when a high-level employee is involved than when the [records] of `rank-and-file' workers are at issue.") I have previously concluded that allegation of excessive force by law enforcement officers gives rise to a "compelling public interest" in disclosure. See Op. Att'y Gen. 91-296.
If as stated previously, however, the officers in question resigned and were not terminated, the first prong for the release of employee evaluation or job performance records has not been met, and in my opinion the investigative records are not subject to inspection and copying by the public.
There may be another reason for this conclusion. It is my understanding that some of the records in question may be or may already have been, supplied to the prosecuting attorney's office for possible criminal prosecutions. It has been stated that:
 Records in a personnel file that might not fall within the specific FOIA exceptions for personnel records and employee evaluation materials should be exempt if they are being used in connection with an ongoing criminal investigation. . . . Under similar circumstances, the federal courts have held that records of this type are compiled for law enforcement purposes.
Watkins, The Arkansas Freedom of Information Act (mm Press 2d Ed. 1994).
This statement is made in light of the exception found at A.C.A. §25-19-105(b)(6) for "undisclosed investigations by law enforcement agencies of suspected criminal activity." Therefore, to the extent your clients' personnel files have been turned over to prosecuting authorities, they may be exempt from disclosure under A.C.A. §25-19-105(b)(6).
The foregoing opinion, which I hereby approve, was prepared by Deputy Attorney General Elana C. Wills.
Sincerely,
WINSTON BRYANT Attorney General
WB:ECW/cyh