Mr. James E. Crouch Attorney at Law Cypert, Crouch, Clark Harwell 111 Holcomb Street P.O. Box 1400 Springdale, Arkansas 72765-1400
Dear Mr. Crouch:
This is in response to your request, pursuant to A.C.A. §25-19-105(c)(3)(B), for an opinion on whether the decision of the Fayetteville Housing Authority with respect to the release of certain records requested by the Northwest Arkansas Times is consistent with the provisions of the Arkansas Freedom of Information Act ("FOIA"). Specifically, you note that the Fayetteville Housing Authority ("FHA") is a publicly assisted housing project, which obtains federal assistance from the Department of Housing and Urban Development ("HUD"). You are the legal counsel to the Authority. You also note that a former maintenance employee of the Housing Authority is the subject of a sexual harassment investigation by the "Arkansas Fair Housing Council" ("FHC"). The allegations involve sexual harassment of female tenants in projects owned and operated by FHA. It is my understanding that the "Arkansas Fair Housing Council" is a private nonprofit entity that is a contractor and/or a grantee with HUD. This entity, the FHC, was not the employer of the employee in question. The employee in question was formerly employed by the Fayetteville Housing Authority (FHA), but "voluntarily resigned approximately one (1) month ago."
The Northwest Arkansas Times has made an FOIA request on the FHA for "all documentation dealing with the Arkansas Fair Housing Council's [FHC's] investigation of sexual harassment allegations filed against [the] former FHA employee. . . ." The request states that it "will include all written complaints filed by residents of Willow Heights Apartments as well as any memorandums, written reprimands, notices of suspension or termination, related letters or other documented material about the accusations against [the employee]." The request also notes that the Fayetteville Housing Authority utilized the FOIA to secure documents from the Arkansas Fair Housing Council "to better understand the parameters of the investigation stemming from [the] alleged harassment." Presumably, therefore, investigative records obtained by FHA from FHC also fall within the parameters of the records requested.
You state, in your request for an opinion on this matter, that you have advised the requester that you believe these records are exempt under the statutory exemptions for "personnel records to the extent that disclosure would constitute clearly unwarranted invasion of privacy" (A.C.A. §25-19-105(b)(10)), and under A.C.A. § 25-19-105(c)(1), governing "employee evaluation and job performance records." You reach this conclusion under the former exception because the allegations against the employee "are of a very potentially embarrassing nature," and under the second exemption because the employee voluntarily resigned and there was no "final administrative resolution of any suspension or termination" as required by A.C.A. § 25-19-105(c)(1).
RESPONSE
I must first note, in response to your request, that I have not been provided with the actual records in question. I cannot, therefore, come to a definitive conclusion about the release of particular records or portions of records. In my opinion, however, the most relevant exemptions in the FOIA in this instance are the exceptions for "employee evaluation or job performance records" and "personnel records."
It is my opinion that if indeed there has been no suspension or termination of the employee in question, and he in fact "voluntarily resigned," your decision to withhold from inspection any properlyclassified "employee evaluation or job performance records" is consistent with the FOIA. "[E]mployee evaluation or job performance records" (including "preliminary notes and other materials") are disclosable only if the following three conditions have been met: (1) There has been a final administrative resolution of any suspension or termination proceeding; (2) The records in question formed a basis for the decision made in that proceeding to suspend or terminate the employee; and (3) There is a compelling public interest in the disclosure of the records in question. A.C.A. § 25-19-105(c)(1).
Thus, as to those records which in fact constitute evaluation or job performance records, it is my opinion that you have properly determined that such records are not subject to disclosure under the FOIA because the individual was neither suspended nor terminated. In this regard, my predecessor has previously opined that documents such as written reprimands, letters of caution, documents related to demotions, and other such disciplinary records generally fall within the "job performance records" exemption. See, e.g., Ops. Att'y Gen. 93-105, 93-055, 92-231, 92-191, 91-324 and 91-303. As a general matter, additionally, records which reflect administrative action in response to or in connection with a complaint will fall within the evaluation or job performance category.See Op. Att'y Gen. 96-324. It has also previously been opined on numerous occasions that records of investigations into alleged employee misconduct are generally covered by the "employee evaluation or job performance records" exemption. See, e.g., Ops. Att'y Gen. 96-257, 96-168, 94-127, and 92-207. It has also been concluded that records which were created as part of an inquiry into or investigation of sexual harassment allegations were exempt from disclosure where there had been no suspension or termination decision. Op. Att'y Gen. 96-257.
One important point should be mentioned in this regard, however. This exemption is limited to records created by or at the behest of the public employer. This conclusion is consistent with previous opinions involving sexual harassment allegations. See, e.g., Op. Att'y Gen. 98-001
(documents received from third parties and not created by the employer as a part of an investigation are not "employee evaluation or job performance records, but might be classified as "personnel records"); Op. Att'y Gen. 96-342 (records not made or given as part of the employing agency's inquiry or investigation are not "job performance records" and are generally subject to disclosure absent the presence of "intimate information" that might give rise to a privacy interest); and Op. Att'y Gen. 96-257 (same). See also Op. Att'y Gen. 99-026 (agreeing with my predecessor's conclusion that documents may be classified as "employee evaluation or job performance records if they were created in theevaluation of the employee's performance). Documents not created in the evaluation process do not come within the rationale behind the §25-19-105(c)(1) exemption. That exemption promotes candor in a supervisor's evaluation of an employee's performance with a view toward correcting any deficiencies. See WATKINS, The Arkansas Freedom of Information Act (mm Press, 3d ed. 1994) at 141-142.
The distinction is pertinent because complaints received from third parties, and not created by or at the behest of the public agency are in all likelihood not properly classified as "employee evaluation or job performance records. In addition, the records obtained by FHA from FHC in this regard are in all likelihood not properly classified as "employee evaluation or job performance records. Any documents not created by, or pursuant to the actions of the FHA in evaluating or documenting the employee's job performance are not in my opinion subject to the test found in A.C.A. § 25-19-105(c)(1) for the release of evaluation or job performance records and should be disclosed.
A question arises, however, as to whether any such third party records may be properly classified as "personnel records." It is not entirely clear whether these documents constitute "personnel records," to which A.C.A. § 25-19-105(b)(10) is applicable, merely by virtue of the fact that they are now in the possession of FHA. No Arkansas Supreme Court precedent speaks to this precise issue. See however, Op. Att'y Gen. 98-001
(stating that a sexual harassment complaint made by a student against a college employee, although not a "job performance" record, might be a personnel record of the college employee once in the hands of his employer).
A test different from the one governing "employee evaluation and job performance records" applies to the release of "personnel records." The applicability of this test requires a case-by-case review of the documents in order to determine their exempt status. In the event any of the documents in the possession of FHA and responsive to the request are properly classified as "personnel records," I will set out the relevant test below.
Under the provisions of the FOIA, "personnel records" are subject to disclosure except to the extent that disclosure would constitute a "clearly unwarranted invasion of personal privacy." A.C.A. §25-19-105(b)(10). The FOIA does not define the phrase "clearly unwarranted invasion of personal privacy." However, the Arkansas Supreme Court has construed the phrase. In determining which disclosures constitute a "clearly unwarranted invasion of personal privacy," the Arkansas Supreme Court has adopted a balancing test. The court stated inYoung v. Rice, 308 Ark. 593, 826 S.W.2d 252 (1992):
 The fact that section § 25-19-105(b)(10) exempts disclosure of personnel records only when a clearly unwarranted personal privacy invasion would result, indicates that certain `warranted' privacy invasions will be tolerated. Thus, section § 25-19-105(b)(10) requires that the public's right to knowledge of the records be weighed against an individual's right to privacy. . . . Because section § 25-19-105(b)(10) allows warranted invasions of privacy, it follows that when the public's interest is substantial, it will usually outweigh any individual privacy interest and disclosure will be favored.
Young, 308 Ark. at 598.
In Young, the court upheld the denial of access to the names of police officers participating in the lieutenant promotion examination proceedings, but allowed release of the records of the examination with the names deleted. The court relied upon federal case law that finds a substantial privacy interest in records relating the intimate details of a person's life, including any information that might subject the person to embarrassment, harassment, disgrace, or loss of employment or friends. The court found that some of the actions of the police officers when taking the role-playing portion of the examination were "embarrassing behaviors" touching on intimate details of the candidates' lives, and the release of the information could subject them to embarrassment and perhaps threaten future employment. The court therefore found a substantial privacy interest in the records. The court also found a substantial public interest in the records, but concluded that the public's interest was satisfied by the release of the examination records with the candidates' names deleted.
Other federal case law, like that relied upon in Young, delineates other types of information, the release of which might constitute a "clearly unwarranted invasion of personal privacy." The following specific information has been exempted from public disclosure through judicial interpretation: Personal histories, religious affiliations of employees,Church of Scientology v. Department of Defense, 611 F.2d 738 (9th Cir. 1979); citizenship, United States Department of State v. Washington PostCo., 456 U.S. 595 (1982); marital status, Simpson v. Vance, 648 F.2d 10
(D.C. Cir. 1980); social security numbers, Swisher v. Dept. of the AirForce, 660 F.2d 369 (5th Cir. 1981); information about family life,Providence Journal Co. v. F.B.I., 460 F. Supp. 778, reversed on distinct grounds, 602 F.2d 1010 (1st Cir. 1979); information regarding welfare payments, legitimacy of children, family rights, and alcohol consumption,Rural Housing Alliance v. Department of Agriculture, 498 F.2d 73 (D.C. Cir. 1974).
In contrast, courts have found relatively little privacy interest in records revealing names, date and place of birth, salaries of public employees, training or education background, and work experience. Kruzonv. Department of Health Human Services, 649 F.2d 65 (1st Cir. 1981);Simpson v. Vance, 648 F.2d 10 (D.C. Cir. 1980).
Finally, it should be noted that this office has consistently taken the position that the fact that the subject of the records may consider the release of the records to be a clearly unwarranted invasion of personal privacy is not relevant to the analysis. See Ops. Att'y Gen. 94-198, 94-178 and 93-055. See also WATKINS, THE ARKANSAS FREEDOM OF INFORMATION ACT (mm Press, 2d ed. 1994) at 126.
In my opinion the question of whether release of any "personnel records" in the hands of FHA would constitute a "clearly unwarranted invasion of personal privacy" is a factual question that will turn entirely upon the contents of those documents. The balancing test set out above is the applicable standard. In this regard, however, if records contain both exempt and nonexempt information, the public entity must release the records with the exempt information deleted. A blanket denial of access in such a case is impermissible. See, e.g., Op. Att'y Gen. Nos. 97-286, 97-077 and 96-193.
Another possible exemption should be noted. In McCambridge v. City ofLittle Rock, 298 Ark. 219, 766 S.W.2d 909 (1989), the Arkansas Supreme Court held that a constitutional privacy interest applies to matters that: (1) an individual wants to and has kept confidential; (2) can be kept confidential but for the challenged governmental action in disclosing the information; and (3) would be harmful or embarrassing to a reasonable person if disclosed. The court further held that if these attributes apply to the matters in question, it must then be considered whether the governmental interest in disclosure under the Act (i.e., the public's legitimate interest in the matter) outweighs the individual's privacy interest in their non-disclosure. The test for determining whether the release of documents would violate a constitutionally protected right to privacy is "similar to that used in connection with the FOIA exemption for personnel records. . . ." See WATKINS, THE ARKANSAS FREEDOM OF INFORMATION ACT (mm Press, 3d ed. 1994) at 170. This exception, however, is restricted to information that is "extremely personal." Op. Att'y Gen. 97-244.
Senior Assistant Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:ECW/cyh